UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RYAN WESLEY ROUTH,

    Defendant.
_____/

## RESPONSE TO GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

On October 16, 2024, the day before the extended discovery deadline, the government filed a Motion for Protective Order regarding all discovery materials.[1] [DE 43]. The proposed order imposes a complete restriction on Mr. Routh's ability to "maintain discovery materials at the Federal Detention Center or other jail facility without defense counsel present to prevent the purposeful or unintentional dissemination of discovery." [DE 43-1]. The proposed order also imposes various other restrictions on defense counsel and members of the defense team. The protective order does not restrict the government's dissemination of discovery materials in any capacity. *Id.* at 2. This one-sided, blanket protective order covering every item of discovery is overbroad, unduly burdensome on the defense, and unsupported by legal authority. Meanwhile, it would deprive Mr. Routh of his constitutional right to meaningfully participate in his own defense under the Fifth and Sixth Amendments,

---

[1] As of filing, defense counsel has not received a copy of the discovery.

as well as his right to free speech under the First Amendment. The Court should instead impose a more tailored protective order like those adopted in similar cases.

### I. The Protective Order is Overbroad.

The federal discovery rules do not permit the government to obtain a blanket protective order against Mr. Routh's possession of any and all discovery materials.

1. As the party seeking the protective order, the government bears the burden to establish "good cause" for any restriction. Fed. R. Crim. P. 16(d)(1); *see also* Fed. R. Civ. P. 26(c); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). While Rule 16(d)(1) "articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

In determining whether the government has met its burden, the Court must generally balance the government's need for the restriction sought with the prejudice that would result if the restriction were imposed. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) ("this court has identified four factors for ascertaining the existence of good cause which include: [1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.") (quotation omitted); *see also* ABA Criminal Justice Standards on Discovery Regarding Protective Orders, Standard 11-6.2(b).

As to the government's need for the restriction, it must "show[ ] that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994) (quotation omitted). Where the government simply conveys a "bald statement" that an "insubstantial showing of need to warrant a protective order under Rule 16(d)(1)," it has not met its burden to show "good cause." *United States v. Nelson*, 486 F. Supp. 464, 480 (W.D. Mich. 1980); *see United States v. Smith*, 985 F.Supp.2d 506, 523 (S.D.N.Y. 2013) ("conclusory arguments" do not justify a protective order).

As to the prejudice from any discovery restrictions, the Eleventh Circuit has recognized that, even in the civil context, "trial preparation and defense . . . are important interests, and great care must be taken to avoid their unnecessary infringement." *Farnsworth*, 758 F.2d at 1547. More generally, courts should issue a protective order only if the potential harm of disclosure is greater than the prejudice caused by the proposed protection, and it should impose only those restrictions that are reasonable and necessary in relation to an articulated harm. In other words, a protective order should be "no broader than is necessary" to serve its intended purpose. *United States v. Lindh*, 198 F.Supp.2d 739, 742 (E.D. Va. 2002).

2.  In this case, the protective order sought is overbroad on its face. The government's proposed protective order is an all-encompassing prohibition on Mr.

3

Routh from possessing any and all discovery materials outside the presence of counsel. The government does not provide any specificity about which discovery materials (or categories of materials) would implicate the government's concerns. Instead, it seeks to restrict him from possessing *all* discovery outside the presence of counsel. To justify this sort of "umbrella" protective order, the government bears "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122 (3d Cir. 1986).

The government does not even attempt to meet that heavy burden. Rather, the government's justification for the protective order is based on general claims that the discovery is voluminous, contains "sensitive" information regarding the ongoing investigation, and contains personal identifying information (PII) of civilian witnesses and law enforcement agents. To be clear, the defense has no objection to a tailored protective order restricting the dissemination of PII. However, the defense objects to a blanket restriction based on the voluminous nature of discovery as well as "sensitive" information. As explained below, the voluminous nature of the discovery weighs against, not in favor, a blanket protective order. And the government does not explain why the Court could not issue a protective order that is limited to specific categories of truly sensitive documents (*e.g.*, medical records).

Moreover, it is not uncommon for federal criminal investigations to involve voluminous discovery containing PII and other "sensitive" information. Remarkably,

4

however, the government cites no authority supporting a blanket protective order merely because the discovery has those characteristics. Indeed, the government cites no authority at all supporting a blanket protective order that prohibits a criminal defendant from accessing the discovery in his own case without defense counsel.

The only other basis for the government's request is "to prevent the improper dissemination of the discovery materials to influence the public's perception of the matter or unduly interfere with the proper administration of justice." [DE 43:4]. Ironically, however, it is the *government* that has been disseminating information to influence the public's perception of this case. Public statements have been made only by the Government, including the DOJ, FBI, and Secret Service.[2] Indeed, the same prosecutor who filed the motion for a protective order here wrote about discovery and published photographs and a letter in support of pre-trial detention [DE 14], making

---

[2] The Department of Justice issued two press releases about this case. *See Ryan Wesley Routh Indicted for Attempted Assassination of Former President Trump*, September 24, 2024 https://www.justice.gov/opa/pr/ryan-wesley-routh-indicted-attempted-assassination-former-president-trump; *Suspect at Trump International Golf Course Charged with Firearms Offenses,* September 16, 2024, https://www.justice.gov/opa/pr/suspect-trump-international-golf-course-charged-firearms-offenses. The Secret Service Acting Director Ronald Rowe held a press conference on September 16, 2024. *See* https://apnews.com/video/donald-trump-u-s-secret-service-ron-rowe-shootings-assassinations-215b9c19aad44cfbb2de9f8c05f05d8a.
The Secret Service also issued a Statement on September 15, 2024. *See* https://www.secretservice.gov/newsroom/releases/2024/09/secret-service-statement-regarding-september-15-2024-security-incident. And the FBI issued a statement on September 15, 2024, https://www.fbi.gov/news/press-releases/fbi-statement-on-incident-in-west-palm-beach-florida.

that information available to the general public and thereby undermining that purported concern here. "Legal trials are not . . . won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. State of Cal.*, 314 U.S. 252, 271 (1941).

Meanwhile, even if the government had some interest in preventing the dissemination of certain information, that interest cannot possibly extend to the entire corpus of discovery. While undersigned counsel still has not yet been received the discovery materials, the government has advised that it involves at least 5.5 terabytes of electronic discovery—a massive amount of information. [DE 49:7]. And the discovery likely includes all of Mr. Routh's digital property. So, for example, were he to publish a photo of his family or a personal trip he took abroad, that would likely be "publishing" part of discovery. So too if he were to publish any political thoughts or opinions he has previously written, including in one of his books. None of this dissemination would necessarily be improper or adversely impact the fair administration of justice.

3. The defense submits that the standard protective order negotiated between the Federal Public Defender's Office in the District of Columbia and the Department of Justice for January 6th prosecutions is an example of a properly limited protective order. One such example is attached as Exhibit A. Similar to this case, the January 6th cases are high-publicity cases, they consist of approximately 11 terabytes of discovery, and the discovery contains sensitive information. Even then, however, the standard order permits defendants to possess copies of their discovery

6

either at home or at the jail, with the only exception being discovery that is marked "highly sensitive." The defendants may possess materials marked "sensitive," but those discovery materials may not be disseminated. Furthermore, the government is restricted from marking materials as "highly sensitive" or "sensitive" unless they meet delineated categories, such as materials that consist of PII, medical information, tax information, "security information" pursuant 2 U.S.C. § 1979, etc.... For reasons that are unclear, however, the government would not agree to a similar protective order in this case. Making matters worse, the government's overbroad protective order would infringe Mr. Routh's constitutional rights, as explained below.

## II. The Protective Order Infringes Mr. Routh's Fifth and Sixth Amendment Rights to Prepare his Defense.

"Due process dictates that an indictment afford a defendant notice of the charges so that the defendant can prepare an adequate defense." *United States v. Alvarez-Moreno*, 874 F.2d 1402, 1410 (11th Cir. 1989). Carrying that idea forward, "[t]he Sixth Amendment right to counsel guarantees a defendant . . . a sufficient time within which to prepare a defense." *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005) (quotation omitted); *United States v. Verderame*, 51 F.3d 249, 252 (11th Cir. 1995). To do so, a defendant must be afforded the opportunity to communicate with counsel. *See id.; Avery v. Alabama*, 308 U.S. 444, 446 (1940) (requiring the defendant to be afforded a meaningful opportunity to confer and consult with counsel to prepare his defense); *United States v. Schlei*, 122 F.3d 944, 988 (11th Cir. 1997) (finding that the "fairness of the entire system" is in question when the defendant

7

cannot adequately prepare). Indeed, the Eleventh Circuit has reversed a defendant's conviction when he could not confer with counsel about documents that the defendant needed to prepare his testimony outside of brief, in-court review sessions. *United States v. Cavallo* 790 F.3d 1202, 1215-16 (11th Cir. 2015); *see Geders v. United States*, 425 U.S. 80, 88 (1976) ("the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance."). Thus, before issuing any protective order, "courts should weigh the impact this might have on a defendant's [constitutional] right to prepare and present a full defense at trial." *Lindh*, 198 F.Supp.2d at 742.

The government's proposed protective order—preventing Mr. Routh from accessing any discovery outside the presence of counsel—fails to properly account for his constitutional right to assist in the preparation of his own defense. Although the government has not yet provided discovery, it has represented that the discovery is so incredibly voluminous (with electronic discovery alone at 4,000 terabytes) that the case should be designated "complex." [DE 30:2]. In the government's First Response to the Standing Discovery Order, it represented that, "upon entry of a protective order, the Government will produce" enumerated items in subsection A5, which are "250 gigabytes of data" and 70 electronic devices of approximately 5.5 terabytes of data. [DE 49:2-7]. Without reviewing the discovery, it is impossible to determine how long it will take to review the materials. Reviewing any terabyte of discovery is onerous. Just one terabyte of information is the equivalent of 250,000 photos taken

with a 12MP camera, or 250 movies or 500 hours of HD video, or 6.5 million document pages, commonly stored as Office files, PDFs, and presentations. *How much is 1 TB of storage?,* Dropbox, https://www.dropbox.com/features/cloud-storage/how-much-is-1tb. One terabyte of information is also equivalent to 1,300 physical filing cabinets of paper. *Id.*

If Mr. Routh cannot review discovery outside the presence of counsel, then it will be impossible for him and counsel to prepare a defense in a timely manner. The voluminous nature of the discovery is exacerbated by the fact that Mr. Routh is housed at the Federal Detention Center (FDC) in Miami, while defense counsel are located in Ft. Pierce and West Palm Beach. (After all, this is a West Palm Beach Division case, and this Court is located in Ft. Pierce). Specifically, FDC is located at 33 NE 4th St. in Miami, which is approximately 134 miles south of the Ft. Pierce Courthouse, located at 101 South U.S. Highway. This distance requires approximately a half day of travel just for counsel to physically visit Mr. Routh.

Given the anticipated amount of discovery, it would be logistically impossible for counsel to take consistent trips to Miami just to show and review any aspect of the discovery with Mr. Routh. He requests time to read the anticipated reports and other information, the same time given to any federal criminal defendant, in order to understand his own case and assist in the defense. Requiring all discovery review to take place "in the presence of counsel" imposes significant restrictions on the manner in which counsel can prepare and litigate this case. Instead of preparing the case for

9

trial, undersigned counsel would be forced to review the discovery at the jail with Mr. Routh. Importantly, undersigned counsel is also restricted from bringing computers and other devices into FDC, such that their ability to review the discovery with Mr. Routh and/or prepare for trial is limited inside of the federal detention facility.

### III.  The Protective Order Infringes Mr. Routh's First Amendment Right to Free Speech.

The government's proposed protective order would also unnecessarily infringe Mr. Routh's First Amendment right to free speech. As discussed, the voluminous discovery in this case likely includes *all* of Mr. Routh's personal, digital property. That will include all of his previous political opinions, messages, and expression. The government's proposed protective order would thus prevent him from disseminating his *own* property expressing political speech at the core of the First Amendment.

Although the government's motion references Mr. Routh's political expression, it does not address the First Amendment implications of its protective order. Instead, the government emphasizes that "the purpose of discovery is trial preparation and that information provided pursuant to the order is to be used only for that purpose." [DE 43:3]. But the government's overbroad protective order will frustrate rather than facilitate that purpose because, as explained above, the defense cannot adequately prepare for trial if the voluminous discovery can be reviewed by Mr. Routh only when he is physically accompanied by defense counsel.

In any event, the government incorrectly suggests that there are no First Amendment implications when it comes to discovery materials. In *Seattle Times Co.*

10

*v. Rhinehart*, 467 U.S. 20 (1984), a civil case, the Supreme Court rejected a First Amendment right to disseminate discovery, but the Court emphasized that the information in question was gained "only by virtue of the trial court's discovery process." *Id.* at 32. Recognizing that the protective order in that case still "implicates the First Amendment rights of the restricted party," the Court emphasized that "the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Id.* at 34. The Court reiterated that important caveat in its holding. *See id.* at 37 ("hold[ing] that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and *does not restrict the dissemination of the information if gained from other sources*, it does not offend the First Amendment") (emphasis added).

The government's protective order in this case extends beyond that holding. It would impermissibly restrict Mr. Routh from disseminating his own property expressing political speech based solely on the fact that this property is now included in the government's discovery. The government cites no case law to support this restriction or otherwise square it with the First Amendment. Meanwhile, the standard protective orders entered in the January 6th prosecutions notably exempt "materials that were derived directly from Defendant." *See, e.g.*, Exhibit A at 5.

In effect, the government's protective order is tantamount to a request for a gag order that would bar Mr. Routh from communicating with the press about his

discovery. But "court orders restraining speech about an ongoing criminal proceeding are presumptively unconstitutional." *United States v. Trump*, 88 F.4th 990, 1004 (D.C. Cir. 2023). And there are specific factors that must be considered before such prior restraints may be imposed. *See, e.g.*, *Nebraska Press Association v. Stuart*, 427 U.S. 539, 547 (1976) (analyzing "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger [of an unfair trial for defendant]"). The Government cannot circumvent this analysis under the guise of a sweeping protective order. And any order restricting the right of free expression protected by the First Amendment "must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Carroll v. President & Com'rs of Princess Anne*, 393 U.S. 175, 183 (1968) (quotation omitted). The government's overbroad protective order flouts rather than respects that principle.

## CONCLUSION

The Court should deny the government's motion for a proposed protective order that is overbroad and unnecessarily infringes Mr. Routh's constitutional rights.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

| | |
|---|---|
| *s/ Kristy Militello* | *s/Renee M. Sihvola* |
| Kristy Militello | Renee M. Sihvola |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Attorney for the Defendant | Attorney for the Defendant |
| Florida Bar No. 0056366 | Florida Bar Number: 116070 |
| 250 South Australian Ave., Suite 400 | 250 South Australian Ave., Suite 400 |
| West Palm Beach, Florida 33401 | West Palm Beach, Florida 33401 |
| (561) 833-6288 – Telephone | (561) 833-6288 - Telephone |
| Kristy_Militello@fd.org | Renee_Sihvola@fd.org |

CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello