UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>24-80116-CR-CANNON/McCabe</u>

**UNITED STATES OF AMERICA**

vs.

**RYAN WESLEY ROUTH,**

    **Defendant.**

_____/

## GOVERNMENT'S UPDATED STATUS REPORT REGARDING DISCOVERY

Pursuant to the Court's December 23, 2024 Order (ECF 91), the United States respectfully submits this discovery status report. The prosecution previously filed a discovery status report on November 22, 2024 (ECF 76). We rely upon that report for a detailed discussion of discovery produced by the Government in this case up to the date of its filing. What follows is an update on the status of discovery between then and now, highlighting as well the continued absence of any defense discovery and the impact of that on the Government's upcoming pretrial deadlines.

### Background

On September 15, 2024, the Defendant, a convicted felon with a lengthy criminal history, attempted to kill then-Major Presidential Candidate, now President, Donald J. Trump. He did so by camping on the perimeter of the Trump International Golf Course while the President was playing golf, and creating a sniper hide armed with a loaded SKS-style rifle bearing an obliterated serial number aimed directly at the course. When a Secret Service agent came across Routh in the tree line shortly before the President would have come into range, Routh targeted the agent before fleeing the golf course in a Nissan Xterra with a Florida license plate not registered to that vehicle.

Law enforcement arrested Routh on September 15, and a federal grand jury later indicted him for multiple crimes giving rise to this prosecution. The Indictment (ECF 21) charges Routh with attempting to assassinate a Major Presidential Candidate, assaulting a federal officer, being a felon in possession of a firearm, possessing a firearm with an obliterated serial number, and using a firearm in furtherance of a crime of violence. On September 23, 2024, Magistrate Judge McCabe detained Routh pending trial, finding that the defendant posed a danger to the community and a risk of flight due to, among other things, his history and strong evidence of his effort "to stalk [President-elect] Trump over a 30-day period in an attempt to assassinate him." (Det. Hrg. Tr.:129 (ECF 17)).

In its prior status report, the United States described in depth the discovery it had provided to the defense, and its plan for sharing further discovery (*see* ECF 76). We also reminded the Court that this is an entirely reactive case, with no investigation of the assassination attempt before it happened, meaning that a large volume of potential information was gathered by investigators focused at that time primarily on assessing and defusing the threat.

The Court addressed discovery, among other topics, at the status conference on December 11, 2024 (*see* ECF 88). In its subsequent December 23 scheduling order, the Court observed that "notwithstanding Defendant's hints to the contrary, the United States has complied with its discovery obligations, and there is no indication of any unreasonable delays or cause for concern in the United States' production of discovery." (ECF 91:4). The Court also cautioned the defense that its deadline for defense expert disclosures "and related deadlines set forth in this Order, go well beyond the date by which Defendant's reciprocal obligations were triggered in this case." (*id.*:6 n.6).

2

## Updates on Discovery Provided to Date

A. **Documents and Electronic Data**

Since the last status report (ECF 76), the United States has served five further written responses to the Standing Discovery Order (SDO) (ECF 80, 90, 94, 97, and 101). The undersigned prosecutors have provided this additional discovery as promptly as possible once it became available to us. The productions are:

| Responses | Date Produced | Content: | Bates Range | Production Size |
|---|---|---|---|---|
| Fourth SDO Response [ECF 80] | 12/4/2024 | Jail Communications | Gov007524-007627 | 0.14 GB |
| Fifth SDO Response [ECF 90] | 12/20/2024 | Jail Communications<br>Law Enforcement Reports<br>Records<br>Video Evidence<br>Signed Search Warrants<br>Body Worn Camera Footage | Gov007628-009094 | 260 GB |
| Sixth SDO Response [ECF 94] | 1/10/2025 | Search Warrant Returns<br>Device Extractions<br>Drone Footage<br>Third Party Security Footage<br>Real Time Traffic Camera Footage<br>PBC School Police Footage<br>Oran Routh Search Warrant<br>FBI Body Worn Camera Footage<br>FBI Digital Media Reports<br>Jail Communications<br>USSS Reports | Gov009095-015827 | 469 GB |
| Seventh SDO Response [ECF 97] | 2/6/2025 | Third Party Security Footage<br>Third Party Device Communications<br>USSS Reports<br>Drone Footage<br>Hawaii Search Warrant ERT Log<br>FBI Reports and Attachments<br>Law Enforcement Reports<br>Jail Communications<br>Photographic Evidence<br>Records | Gov015828-019489 | 55 GB |

3

| Eighth SDO Response [ECF 101] | 2/28/2025 | Law Enforcement Reports Photographs and Videos Records Jail Communications Interview Recordings Protection Memo Separate Drive of Drone Imagery ATF Reports | Gov019490-019842<br><br><br><br>GovExp011259-011291 | 30 GB |
|---|---|---|---|---|

Throughout this process, to ensure the case remains on track, the prosecution team has responded to questions from defense counsel about the location of items in the discovery even when not required to do so. For example, on February 10, 2025, defense counsel emailed us to ask whether a copy of the letter from the Defendant to his son Oran, referenced in a supplemental discovery filing, was itself provided in the discovery. We replied the next day, February 11, that "photographs of the envelope and documents mailed by the defendant to Oran Routh were produced in our first SDO response as Bates Nos. Gov003245-3264 ([ECF No. 49] at 2." Similarly, on February 24, defense counsel forwarded to us an email from her paralegal stating that she had not received documents referenced in the Government's recent supplemental expert disclosure. We responded that same day by reminding the defense, as we told them at the time of this disclosure, that the documents in question were made available on USAFX on February 3 and remained available to them for download and review. We have also repeatedly followed up – as recently as last week – with the defense about the availability of evidence that we told them required a hard drive which we had not yet received.

We mention these exchanges not to call out the defense, but to demonstrate further for the Court that we are going above and beyond in complying with our discovery obligations. Indeed, as we told the Court in our prior status report, the fact we are producing searchable FBI 302s in

4

the volume we have (including 302s that essentially identify key items of evidence from the digital searches) is further proof that we are doing more than is required to assist the defense in preparing for trial.[1]

### B. Physical Evidence

The United States, at defense request, facilitated a visit by the defense to the golf course crime scene on February 25, 2025, before the deadline set by the Court's Order (ECF 91:6). We took the lead in setting up arrangements for this visit even though the prosecution team obviously does not control the course, which is private property. Likewise, to accommodate a defense request, the prosecution team ensured that the firearm, scope, magazine, ammunition, and anti-ballistic plates were transported from the FBI's lab in Quantico, Virginia, to the FBI Field Office in Miramar so the defense could inspect it, with purported consultants in tow, in South Florida after the golf course visit. The defense had asked us to make this viewing happen on the same day as the golf course visit because their consultants were only available, they said, to make a single trip to South Florida. As we told defense counsel, their request to inspect the firearm in this manner was highly unusual in the experience of the FBI, but nonetheless we made it happen.

As for the remaining physical evidence in the case, all of it is at FBI's main facility in Miramar or in transit thereto. When we have a complete list of what the defense wants to examine, it will be made available to the defense for inspection at a mutually convenient time and place.

---

[1] To date we have produced over 200 FBI 302 interview reports, a disclosure which is not required by any discovery rule or the Jencks Act. *See United States v. Judon*, 581 F.2d 553, 556 (5th Cir. 1978) (holding FBI interview reports were not Jencks Act material and were thus not producible to defendant at trial).

C. **Expert Discovery**

In compliance with the Court's deadline (ECF 91:6), the United States provided a supplemental expert disclosure on February 3, 2025. This supplement was limited, as we already had provided the lion's share of expert discovery required at this point by Fed. R. Crim. P. 16 and Local Rule 88.10. The supplemental disclosure contained:

- An amended CV for the previously-disclosed document examiner, Rachel Clay (GovExp011248-011251).

- A CV and summary of expected testimony from Special Agent Nicholas Schnelle, Special Agent, Federal Bureau of Investigation, Special Weapons and Tactics Team (GovExp011252-011253), expanding upon a disclosure already made earlier by the prosecution, and identifying the witness by name.

- A CV and summary of expected testimony from Randy Walters, Destructive Device Examiner, Bureau of Alcohol, Tobacco, Firearms and Explosives (GovExp011254-011258), regarding his ongoing analysis of the ammunition and potential destructive device components found inside the gray Sterilite bin placed by the Defendant at a private residence in Greensboro, North Carolina, including the capacity of that ammunition and/or those components to kill or seriously injure a human being.

On February 28, the Government made available Mr. Walters' report, tracking our earlier disclosure.

**Anticipated Future Discovery from the Government**

There are additional areas of potential discovery that the prosecution team is continuing to gather and review. To that end, the Government anticipates it will produce the following additional materials beyond what it has already produced: photographs and law enforcement reports memorializing a January 30, 2025 search of the Nissan Xterra; law enforcement reports summarizing third party interviews; limited, outstanding subpoena returns; U.S. Secret Service radio communications; and Cellebrite reports of electronic devices belonging to Routh, or belonging to third parties, that also contain communications with Routh.[2] Some of these items the prosecution team does not yet possess or has only recently acquired; others still require review and/or redactions of sensitive information. We will continue to work expeditiously.

**Defense Discovery**

The defense did not provide any "notice of an insanity defense, notice of expert evidence of a mental condition, or motion for mental competency or for relief related to Defendant's mental condition" by the Court's deadline of February 3. As the Court explained, this deadline was "necessary to ensure a just, orderly, and speedy trial and is reasonable given the procedural history of this case." (ECF 91:6). So those issues, at least, are off the table for trial.

Ordinary defense discovery, however, remains a concern. Nothing has been provided. We recognize that the deadlines for defense discovery are some ways away: March 28 for defense expert disclosures outside of mental health topics, and June 6 for non-expert items (*id*.). It defies

---

[2] These Cellebrite reports were not previously produced as the Government has been awaiting a hard drive from defense counsel on which to copy these reports. On February 27, 2025, defense counsel advised that a hard drive would be delivered to the Government for this purpose on March 3, 2025.

7

belief, however, that six months into this case the defense has not identified a single item that it reasonably expects to use in its case-in-chief at trial (which is the minimum required by Rule 16, *see* Fed. R. Crim. P. 16(b)(1)(A)).  The absence of defense discovery is more striking because Routh has continued to publicize himself through communications to the media.  *See*, *e.g.*, NEW YORK POST, *Alleged would-be Trump 'assassin' Ryan Routh offers to become Hamas hostage in bizarre letter*, available at https://nypost.com/2025/01/04/us-news/alleged-would-be-trump-assassin-ryan-routh-offers-to-become-hamas-hostage-in-bizzare-letter/ (last accessed Feb. 26, 2025).

      The greater problem is that these late defense discovery deadlines, and Routh's refusal to provide information to us on a rolling or "as available" basis, makes this Court's timetable for pre-trial motions virtually impossible for the Government to meet.  For example, the Government cannot realistically be expected to prepare and file *Daubert* motions to exclude any proposed defense experts – at least motions of the quality and helpfulness this Court should expect – in the short time (five business days) between March 28 and the current motions deadline of April 7.  This is in sharp contrast to the defense, which has possessed the vast majority of the Government's expert disclosures since November 17, 2024 – i.e., four months ago.  And to the extent the April 7 deadline applies to motions *in limine*, the Government obviously cannot move *in limine* to exclude evidence that the defense has not yet even proposed to introduce.  This is problematic because the Court earlier directed that the parties may file only one motion *in limine* for the whole case  (ECF 29).  The United States will be prepared to discuss these timing concerns at the upcoming status conference and present reasonable alternative dates, but for present purposes, it is enough to highlight that the absence of rolling defense discovery is hampering the prosecution

and incompatible with the Court's deadlines.

## Conclusion

The Government has continued to comply with the Court's deadlines, and has produced discovery in SDO responses accompanied by detailed indices (attached), as well as in separate communications with the defense. We will continue to comply with our obligations. The Government will, of course, be prepared to address any of these topics for the Court at the upcoming status conference.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   /s/ *John Shipley*
John C. Shipley
Florida Bar No. 69670
Christopher B. Browne
Florida Bar No. 91337
Maria K. Medetis
Florida Bar No. 1012329
Assistant United States Attorneys

U.S. Attorney's Office
Southern District of Florida
99 Northeast 4th Street, 8th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9111
E-mail: John.Shipley@usdoj.gov

SUE BAI
SUPERVISORY OFFICIAL PERFORMING THE
DUTIES OF THE ASSISTANT ATTORNEY
GENERAL FOR THE NATIONAL SECURITY
DIVISION

By:   /s/ *David C. Smith*
David C. Smith, Trial Attorney
Court ID No. A5503278
Department of Justice, National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-0849
Email: David.Smith5@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document and attached indices with the Clerk of the Court using CM/ECF on February 3, 2025.

/s/ *John C. Shipley*
Assistant United States Attorney
