UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON/McCabe

UNITED STATES OF AMERICA

vs.

RYAN WESLEY ROUTH,

      Defendant.
_____/

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPLETE
CONFIDENTIAL AND INDEPENDENT TESTING OR TO EXCLUDE
GOVERNMENT'S EXPERT TESTIMONY (ECF 114)

      Defendant Ryan Wesley Routh seeks an order mandating the Government surrender key evidence to a defense team expert to allow him to inspect, photograph, and live fire the rifle seized from Routh's sniper hide.  In the alternative, Routh asks to exclude testimony from the Government about the rifle's operability, specifically, proposed testimony from the FBI's toolmark examiner about his own live firing during his routine inspection.  In the spirit of cooperation, we have no objection to the Defendant visually examining the firearm and its components again and photographing them appropriately.  But nothing further is required, as a matter of law or as a matter of fact on this record.  Even holding aside that this defendant tampered with the evidence the last time he had it in his custody – obliterating the rifle's unique serial number among other things prior to the assassination attempt – no further relief is required.

      The Defendant rests his motion on essentially three arguments.  First, he contends that he is entitled to present a "complete defense," and that part of a complete defense is to determine the operability of the rifle in order to argue factual impossibility as to Count 1 (attempted assassination).  Such a defense is expressly prohibited under well-settled case law.  Second,

1

Defendant argues that Rule 16 of the Federal Rules of Criminal Procedure "mandates" a defense expert live fire the rifle. Rule 16 contains no such requirement. Third, the Defendant asserts that he is entitled to equal access to the Government's evidence. Put simply, because the Government got to test fire the rifle, he too should be permitted to fire the rifle. That argument is likewise misplaced especially where, as here, the operability and accuracy of the firearm are germane only to support an irrelevant defense.

## Factual and Procedural History

This case arises out of the Defendant's calculated plan to assassinate now-President, then Major Presidential Candidate, Donald J. Trump (hereafter, "President Trump" or "the President") before he could be re-elected. Over the course of months, the Defendant – who possesses a Hawaii driver's license and has no ties to South Florida – intentionally plotted to kill President Trump, and took significant steps toward making that happen, culminating in his attempt to assassinate the President in West Palm Beach at the Trump International Golf Club on September 15, 2024, from a sniper hide he carefully set up, using a military-grade SKS rifle that he possessed illegally. A Secret Service agent effectively thwarted the assassination when he unexpectedly came across Routh hiding near the 6th green. Routh targeted the agent, who then fired his service weapon in Routh's direction; Routh fled, running across the street and escaping in a car bearing a license plate that did not belong to him. Law enforcement eventually stopped the car and apprehended Routh in neighboring Martin County.

The indictment alleges five crimes. Count 1 charges Routh with the attempted assassination of a Major Presidential Candidate, contrary to 18 U.S.C. §351(c). Count 2 charges Routh with knowingly possessing and brandishing a firearm in furtherance of that assassination attempt, contrary to 18 U.S.C. §924(c)(1)(A)(ii). Count 3 charges that Routh intentionally

assaulted a federal officer (the Secret Service agent), in violation of 18 U.S.C. §§111(a)(1) and (b). Count 4 alleges that Routh, a convicted felon, knowingly and unlawfully possessed a firearm, contrary to 18 U.S.C. §922(g)(1). Count 5 alleges that Routh knowingly possessed a firearm with an obliterated serial number, contrary to 18 U.S.C. §922(k).

We expect the primary issue, certainly on Count 1, will be Routh's intent. It will be our burden to show that Routh intended to kill President Trump and took at least one "substantial step" toward doing so; a substantial step must be some act that strongly corroborates the intent. *See, e.g.*, *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). Intent is also a key component of Count 2 (which charges Routh's possession of a firearm in the course of the crime identified in Count 1), and of Count 3, which alleges that Routh intentionally assaulted the brave Secret Service agent who confronted him. Where, as here, the Government faces not only the need to prove specific intent but also to overcome the effect Routh's flight had on the available evidence, the Government's ability to muster all the relevant facts is paramount, including the operability of the rifle, as discussed *infra*.

Counts 4 and 5 do not require proof of intent but do require proof of the Defendant's knowledge of the firearm, his status as a felon, and the presence of an obliterated serial number. Neither count – indeed, no count in this case – requires proof that the firearm was operable at the time, let alone at some later time after its collection and processing as evidence.

At the March 7, 2025, status conference defense counsel requested "the ability for [their] experts to test the operability of the firearm and to test it for accuracy and distance." *See* Transcript of March 7, 2025, Status Conference at 26. Defense noted the Government's objection to live firing the rifle. *Id.* Defense counsel went on to explain at the status conference its reasoning for seeking to live fire the rifle, stating that because the government

> intend[s], it appears, to introduce evidence that the firearm was operable and, I think, capable of making the shot. And so we would like to have our experts determine – it is an old firearm – is it actually operable and to what degree is it accurate? And to what degree can it fire at the distance the government's alleging?

*See id.* at 31.

On March 28, 2025, consistent with the Court's March 21, 2025, Order (ECF 109), the Defendant filed the instant motion (ECF 114). In the motion, Defendant raises several arguments in support of the request that his expert(s)[1] are entitled to live fire the rifle in this case. The Defendant argues that he is entitled to a "meaningful opportunity to raise a complete defense." *See* ECF 114 at 5. He also argues that Rule 16 of the Federal Rules of Criminal Procedure "mandates" the live fire. *Id.* He further argues that his "experts are entitled to [equal access] to the government's evidence." *Id.* All of these arguments are premised on the Defendant's theory that "it may have been *impossible* for the defendant to commit the alleged crime if the firearm was defective, inaccurate, or had a limited range." *Id.* at 8.

To be clear, the suggestion that this rifle may have been inoperable at the time Routh attempted to kill the President is astonishing. We will not chronicle here (in the event we need to address this claim further at trial) all of the facts from the time of the offense showing that it was, including but not limited to the fact that it was loaded when seized and that Routh personally test-fired the gun after he purchased it. For present purposes, it is enough to set forth below why the defendant's motion fails legally and due to any lack of basis.

---

[1] In his motion, the Defendant speaks in terms of multiple experts. *See e.g.,* ECF 114 at 4 ("Upon consultation with defense experts…"); *id.* at 6-7 ("The defense has hired its own experts…"); *id.* at 7 ("the defense may call one or more experts at trial…"). However, he has only provided notice of a single expert pursuant to the Court's Order setting the deadline for Defendant to provide expert disclosures to the Government. *See* Order dated December 23, 2025 (ECF 91 at 6). The Government, therefore, questions whether the Defendant fully complied with the Court's December 23 Order or if the Defendant intends to call additional experts which it has not noticed.

4

**Argument**

**A. The "complete defense" Routh seeks to explore does not exist.**

The Defendant first asserts that he is entitled to take custody of the rifle and fire live ammunition from it so that he can present a complete defense at trial. Because the operability of the rifle is not an element of any charged crime, *see United States v. Adams*, 137 F.3d 1298, 1300 (11th Cir. 1998), this argument is suspect from the start. Moreover, the Eleventh Circuit makes clear that while the Constitution "'guarantees criminal defendants a meaningful opportunity to present a complete defense,' that right 'is not absolute, and is subject to reasonable restrictions.'" *United States v. Lewis*, 40 F.4th 1229, 1246 (11th Cir. 2022) (quoting *United States v. Mitrovic*, 890 F.3d 1217, 1221 (11th Cir. 2018)). Indeed "if the court permits a defendant to present the essence of his desired argument to the jury, his right to present a complete defense has not been prejudiced." *Id.* (internal citations and quotation marks omitted).

There is a further flaw in this argument, however: Routh's "complete defense" claim rests on the idea that it might have been factually impossible for him to assassinate the President with this rifle, and therefore he must explore this idea. *See* (ECF 114) at 8.[2] But impossibility, or a defendant's inability to execute his plan, is not a defense to an attempt crime. As we will address further in a motion we expect to file on Monday, April 7, 2025, "[a] defendant's culpability for a charge of attempt depends only on the circumstances as he believes them to be, not as they really are." *United States v. Hsu*, 155 F.3d 189, 203 (3d Cir. 1998) (quotation marks omitted). That is why "[o]n many occasions, [the Eleventh Circuit] has affirmed attempt convictions when the

---

[2] This idea is not a new one from the defense. Addressing questions to this effect from defense counsel at the detention hearing, Magistrate Judge McCabe asked in apparent disbelief: "[t]he point you may be making is that to the extent he was trying to be an assassin, he was not a very good one?" Det. Hrg. Tr.: 69.

5

defendant could not have achieved the final required act because it would have been impossible to commit the actual crime." *United States v. Root*, 296 F.3d 1222, 1230 (11th Cir. 2002) (collecting cases).[3] "All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt." *United States v. Williams*, 553 U.S. 285, 300 (2008) (quoting 2 W. LaFave, Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003)). In rejecting these factual impossibility claims, including in attempted assassination cases like ours, courts have shut down defendants' attempts to distract juries from the real issue for attempt crimes: whether a "substantial step" occurred. *See, e.g.*, *United States v. Duran*, 96 F.3d 1495, 1507 (D.C. Cir. 1996).

Simply put, there is no permissible defense based on factual impossibility—the notion that the Defendant could not have killed President Trump, whether due to poor planning, mechanical gun defects, intervention by law enforcement, or otherwise. Those considerations have nothing to do with whether the Defendant intended to kill President Trump and took a substantial step toward doing so, which is the heart of the crime charged in Count 1. Because the Defendant admits he is seeking to live fire the rifle for no other reason than to mount a factual impossibility defense, the Court should deny this request. Even if this defense had daylight, as noted above, a court may impose reasonable restrictions, so Routh cannot claim that he has carte blanche to do what he wants with this deadly weapon.

### B.  Rule 16 does not establish a right to conduct independent testing of the rifle.

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Criminal discovery is "governed by the federal rules (Federal Rule of Criminal Procedure 16), statute (18 U.S.C. § 3500), and the common law (*Brady*, *Giglio*,

---

[3]  *Root*'s holding, which also concerned a Sentencing Guidelines issue, was superseded by statute through Amendment 732 to the Sentencing Guidelines. *See United States v. Jerchower*, 631 F.3d 1181, 1186 (11th Cir. 2011).

and its progeny)." *United States v. Irizarry*, 2014 WL 12641582 (M.D. Fla. 2014). Indeed, "the scope of discovery in criminal cases is significantly more restricted" than in civil cases. *See United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983).

Rule 16 requires the Government to make available for inspection, among other things, physical evidence that it will use at trial or that is "material to the defense." With regard to the firearm, we have done so (and will do so again, if the Court directs us to make them available again for visual inspection and photographing). Nothing in Rule 16 compels the Government to make available a deadly weapon so that the defendant in a case, or his team, can live fire it. As the Tenth Circuit said in affirming the district court's rejection of the defendant's request to take custody of a document in the Government's possession so that he could analyze it independently: "Rule 16(a)(1)(E) makes no mention of a defendant's right to take custody of a document, but instead requires only that the government permit the defendant 'to inspect and to copy' documents, a step that the government in this case had already taken. Fed. R. Crim. P. 16(a)(1)(E)." *United States v. Diaz*, 356 F. App'x 117, 127-28 (10th Cir. 2009).

Rule 16 is simply not as expansive as Defendant contends. The rule does not establish or even contemplate a "right" to conduct the testing Routh now seeks. He has cited no binding authority equating the right to inspect with the right to independently test, which would, necessarily, result in safety concerns, a break in the chain of custody, and degradation and destruction of physical evidence he has already tampered with.[4]

---

[4] It is worth noting that at the March 7, 2025, Status Conference defense counsel represented to this Court that they "did not need to receive the firearm," Transcript at 28, and that "[b]ecause of chain of custody and the dangerousness issue, we would never ask to take physical custody [of the rifle]," Transcript at 30. In his motion, the Defendant now asks for the rifle and other materials to "be transported to the defense expert's laboratory and returned." This of course would break the chain of custody of the Government's evidence. Should the Court grant the motion, the Government requests that, consistent with FBI evidence handling policies, the evidence in this

Notably, Rule 16(a)(1)(F) provides grounds for discovery of the reports of examinations and tests conducted by the government. Read together with Rule 16(a)(1)(E), the Defendant can request *inspection* of the physical evidence and obtain reports of the Government's forensic testing (which reports the Government has already produced).[5] The Defendant's claim that the right to inspect under Rule 16 includes the right to conduct his own independent testing of a military-grade firearm designed to kill, is, plainly, wrong. To the extent the Defendant claims materiality on the grounds that the testing is necessary to establish that it was impossible for the Defendant to kill the President, for the reasons explained *supra*, such a factual impossibility defense is barred by law. Any live fire testing to establish operability or accuracy is immaterial to any cognizable defense.

Moreover, the Defendant has not proffered any good faith basis for suggesting the rifle was inoperable when Routh had it – or today, six months later. Requests for specific discovery items not addressed expressly by the rules must be founded on more than speculation. *See, e.g.*, *United States v. Jordan*, 316 F.3d 1251, 1251 (11th Cir. 2003) ("defendant must show more than that the [item] bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the [item] would ... enable [ ] the defendant significantly to alter the quantum of proof in his favor" (internal quotation marks omitted)); *United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997) ("'A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the

---

case be kept in the presence of a FBI Special Agent at all times. Said Special Agent would not be a member of the prosecution team.

[5]      On November 17, 2024, the Government disclosed a summary of the testimony, opinions, and bases of its Firearms and Toolmark Examiner as well as the expert's reports. *See* Expert Disclosure at GovExp000321-455.

district court.'") (quoting *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir.1985) (internal citations and quotation marks omitted)). Routh's motion suggests, rather vaguely, "life fire testing [of the rifle] would be insightful to potential defects in the rifle, accuracy of the rifle, and the capabilities/distance of the rifle." ECF 114 at 4. This description lacks the specificity needed to satisfy *Jordan*.

Finally, Rule 16(d), which governs the Court's regulation of discovery, provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grand other appropriate relief." *Id.* Here, the Defendant has not offered "good cause" for the live fire request. In fact, the request is premised on the faulty belief that factual impossibility is somehow material to this case. It is not.

### C. The defendant cites no caselaw supporting this request.

Routh cites no binding authority from this Circuit compelling the live firing of a weapon. Indeed, he cites no authority at all allowing what he seeks here. The Defendant relies primarily on a district court order in *Untied States v. Crawford*, 16-CR-80170-Rosenberg (SDFL), but that matter involved the testing of *silencers* and silencer parts.[6] *United States v. Cecsarnini*, 220CR0184-TL (WDW), also relied on by the Defendant, likewise involved the testing of silencers, not guns that are designed to kill.

In support of his argument, the Defendant also relies on child exploitation and narcotics

---

[6] Notably, during the March 7 status conference, defense counsel stated that she "provided [the Government] an order where I was permitted to live fire a firearm…back in 2016." March 7, 2025, Status Conference Transcript at 29. Presumably defense counsel is referring there to the *Crawford* case. Importantly, defense counsel leaves out that *Crawford* charged solely the unlawful possession of silencers. It did not charge the unlawful possession of firearms. *See Crawford*, No. 16-80170-CR-Rosenberg (ECF 9). Thus, *Crawford* involved the operability of silencers, not firearms. The legal and factual difference between a silencer and an actual rifle should be obvious.

9

cases for the proposition that his experts are entitled to "test" the evidence. This argument misses the point. A case involving child sexual abuse material ("CSAM") requires proof by the government that the material does *in fact* depict a minor and that the conduct depicted is *in fact* sexually explicit conduct—both of which tend to be the subject of expert testimony in CSAM cases. The only way to do that is to visually inspect the images, thereby giving the defense the ability to review the images just as a government expert would. Likewise, in the narcotics context, the government must prove that the substance charged in the indictment is *in fact* a controlled substance. Additionally, Southern District of Florida Local Rule 88.10(k) expressly requires the government, upon a defendant's request, to

> deliver to any chemist selected by the defense, who is presently registered with the Attorney General in compliance with 21 U.S.C. §§ 822 and 823, 70 and 21 C.F.R. § 101.22(8), a sufficient representative sample of any alleged contraband which is the subject of this indictment, to allow independent chemical analysis of such sample.

*See* S.D.Fla. Local R. 88.10(k). There is no such reciprocal requirement for live fire testing of a firearm under the Local Rules, and for good reason.

In the CSAM and controlled substance cases, defense expert access to the evidence can be essential and, to borrow from the Rule 16 context, "material" to elements of the charged offense and to a defendant's ability to rebut the government's expert findings. Here, as noted, no proof of the operability or accuracy of the firearm is required. Counts 2 and 4 require the Government to prove only that the rifle meets the statutory definition of a firearm; firing the weapon with lethal ammunition is not required to make that determination. Rather, a determination that a weapon "will or is designed to or may readily able converted to expel a projectile by the action of an explosive" or the "frame or receiver of any such weapon," 18 U.S.C. § 921(a)(3), can be made based entirely on a visual inspection of the firearm. "Under [Section 921's] definition, the

government d[oes] not have to prove the operability of the charged weapons since an inoperable gun is still a firearm." *United States v. Locklear*, No. 04-80170, 2007 WL 1760904, at *5 (E.D. Mich. June 15, 2007). The Eleventh Circuit holds that "[n]othing in either § 922(g)(1) or § 921(a)(3) requires the government to show that the unlawful firearm is operable." *Adams*, 137 F.3d at 1300. Even where the government must prove that a gun works, "[d]irect evidence, test-firing, is not required to prove operability of a firearm." *United States v. Robson*, 391 F. Supp. 2d 383, 390 (D. Md. 2005) (citing *Mangum v. State*, 342 Md. 392, 397, 676 A.2d 80, 82 (1996)). Indeed, courts have recognized approval of several alternative methods of a finding of the operability of firearms (which is *not* at issue in this case) without direct evidence including: (1) visual inspection without expert testimony, (2) carrying a weapon for protection, (3) familiarity with firearms, and, (4) possession of ammunition, loaded weapon and shells. *Id*.

### D. The Defendant's "Equal Access" Argument is Incomplete and Not Persuasive.

Finally, Routh contends that the Government got to live fire the rifle, so the defense should also be allowed to also. That argument has no legal support but is misleading anyway.

First, the Government has the heavy burden of proof in this case as in every criminal prosecution – for that reason, the Government is entitled to do certain things that the defense is not, just as the defense is entitled to exercise certain rights the Government cannot.[7]

Second, the motion is vague at best on how exactly the defendant intends to live fire the

---

[7] The examples abound but compare the Government's ability to introduce evidence more expansively under FRE 404(b) when – as here – intent is put at issue by the defendant. *See, e.g., United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."); *United States v. Hicks*, 798 F.2d 446, 451 (11th Cir. 1986) ("The greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice.").

11

gun and in what ways, but there is no statement in the motion that the defense wants only to do exactly what the FBI's toolmark expert did and in the same way and circumstances. There is no fit, on this record, between what the defense is asking the Court and what the Federal Bureau of Investigation did. *Cf. Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) ("[E]xpert testimony proffered in the case [must be] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute … The consideration has been aptly described … as one of 'fit.'" (some citations and punctuation omitted)). Even if that is all Routh wants to do, the FBI's test happened within days after the rifle was seized from the crime scene, as part of the FBI's evidence processing and review; Routh's proposed test-fire would occur seven months later.

Third, the FBI test-fire was done in part for the purpose of entering a test-fired specimen into the National Integrated Ballistic Information Network ("NIBIN"), to determine if the rifle had been previously used or reported in other crimes within Florida and Nationally, *see e.g.,* November 17, 2024, Expert Disclosure at GovExp000326, and was not a contrived exercise such as Routh proposes here to support a legally improper defense argument.

Fourth, as noted above, what basis has the defense provided for believing that rifle was inoperable at the time of the crime? Has Routh himself said so? Is there some other indication in the discovery? Nothing has been proffered, and from our standpoint, there is no reason to think a test-fire by a defense witness (even if the Government's test could be re-created perfectly, despite the passage of time and the defense's likely desire to do something quite different) would show the gun could not have worked exactly as Routh intended it when he loaded it and set up his sniper hide on September 15.

### E. The Defendant's alternative request to exclude Government expert testimony regarding the operability of the rifle should be denied.

Defendant asks, in the alternative, that if the Court is not inclined to permit live firing of

the rifle, then it should exclude the Government's expert testimony regarding "the actual or potential operability, function, or accuracy of the firearm." (ECF 114 at 11). The Defendant cites to Rule 16(d)(2) and speaks in terms of a purported discovery violation and remedies for the supposed violation. This reliance on Rule 16 is, once again, misplaced, for *each* of the reasons just argued. Those reasons do not permit the exclusion of any proposed testimony. But three further points are important:

One, as the Court observed, the Government has fully complied with its discovery obligations. Consistent with Rule 16, Local Rule 88.10, *Brady*, and the Court's discovery-related orders the Government has exceeded its discovery obligations, including its expert disclosure requirements. As previously noted, the Government produced all reports written by its Firearms and Toolmark expert on November 17, 2024. Likewise, the Government has produced numerous photographs of the seized rifle and the chambered round. *See* Gov001417-1425, Gov001485-1491, Gov003529-3530 (magazine detached, but otherwise intact); Gov001492-1496 (round from chamber).

Two, while the operability of the gun is not an element, evidence that the gun worked supports the Defendant's intent to commit the charged offenses—that is, he purchased an operational firearm, loaded it with ammunition, and brought to the golf course planning to kill the President. Proof that the gun was operable is, in other words, relevant to the Government's case in a way that the rifle's hypothetical inoperability is not to any valid defense. Just as critically, the defense will have a full opportunity to rebut the Government's evidence with fulsome cross-examination of the Government's expert and other witnesses.

Third, should this testimony be excluded, the defense will likely be proclaiming to the jury that the Government failed to conduct a proper analysis of the weapon, failed to investigate the

13

case adequately, and failed to produce evidence that the rifle could have killed anyone that day.[8] Allowing the defense to offer such deceptive arguments is not an acceptable outcome on this record, especially given the lack of any identified good faith basis to believe the rifle would not have fired. The defense has received substantial discovery about the rifle and may now be given a second opportunity to inspect it in person, handle it, and photograph it themselves. That is what the law requires in this case, on these charges, and Routh's "alternative" remedy is unfounded.

## Conclusion

For the reasons explained herein, the Defendant's Motion to Compel (ECF 114) should be denied in part. The Court should deny the Defendant's request to live fire the rifle.[9] In denying this request, the Court should not exclude the testimony of the Government's Firearms/Toolmarks expert.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   /s/ *John Shipley*
John C. Shipley
Florida Bar No. 69670
Christopher B. Browne
Florida Bar No. 91337
Maria K. Medetis
Florida Bar No. 1012329
Assistant United States Attorneys

---

[8] The testimony that the defense seeks to exclude, at least as quoted above, is possibly far more expensive than just testimony from the toolmark expert about the test-fire. But the Court need not address that subject because the testimony should not be excluded at all.

[9] Should the Court grant the Defendant's request to live fire the rifle, then the Government respectfully asks for the opportunity to be heard on the various logistical issues associated with this request, to include, safety, evidence handling and delivery, and chain of custody. However, because the motion should be denied for the reasons explained herein, the Court need not consider those issues.

        U.S. Attorney's Office
Southern District of Florida
99 Northeast 4th Street, 8th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9111
E-mail: John.Shipley@usdoj.gov

SUE BAI
SUPERVISORY OFFICIAL PERFORMING THE
DUTIES OF THE ASSISTANT ATTORNEY
GENERAL FOR THE NATIONAL SECURITY
DIVISION


By:   */s/ James Donnelly*
       James Donnelly
       Court ID No. A5503331
       Department of Justice, National Security
       Division 950 Pennsylvania Avenue, NW
       Washington, DC 20530
       Telephone: (202) 514-0849
       Email: james.donnelly3@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on April 4, 2025.

/s/ *John Shipley*
Assistant United States Attorney