Supreme Court
of the
State of New York



CHAMBERS
100 CENTRE STREET
NEW YORK, N.Y. 10013

**JUAN M. MERCHAN**
JUDGE OF THE COURT OF CLAIMS
SUPREME COURT, CRIMINAL TERM
FIRST JUDICIAL DISTRICT

Via Email

April 8, 2024

Todd Blanche, Esq.
99 Wall Street
Suite 4460
New York, NY 10005

ADA Joshua Steinglass
New York County District Attorney's Office
One Hogan Place
New York, NY 10013

Re: *People v. Trump*, Ind. No. 71543-2023

Dear Counsel:

I write to you regarding jury selection. This letter will address three separate issues: 1. Excusing jurors who self-identify as unable to serve; 2. Instructions regarding the use of an anonymous jury; 3. The jury questionnaire and the permissible scope of *voir-dire*.

1. Excusing jurors who self-identify as unable to serve.

This Court typically conducts jury selection in the following manner: I read the caption and introduce the defendant and counsel. I identify the charges against the defendant and briefly outline the nature of the case, providing a brief summary of the allegations[1]. I explain, among other things,

---

[1] On February 15, 2024, the Court invited the parties to submit a one-paragraph summary of the case to be read to the prospective jurors. The parties were unable to agree on the language of the proposed summary and therefore, submitted separate versions. After carefully considering each of the two proposed summaries, this Court has crafted what it believes, is a fair and appropriate narrative of the case, including that the Defendant denies the allegations. The summary is attached as Court's 1. The purpose of the narrative is to provide prospective jurors a fair and balanced summary of the case to assist them in deciding whether there is anything about the nature of the

what an indictment is, my procedure for jury selection, the role of the jury and the Court, the definition of a fair juror, the various stages of a trial, some basic principles of law that govern, including the presumption of innocence, a defendant's absolute right not to testify and that no negative inference may be drawn against a defendant who chooses not to testify, how law enforcement testimony is to be evaluated and the nature of jury deliberations. I also provide prospective jurors an estimate of the length of the trial and the anticipated schedule. In this case, I will also inform prospective jurors that the Court will not convene on any days or times that might conflict with a juror's observance of the Passover Holiday. I will explain to the jurors that observance of Passover does not preclude them from serving because the Court will accommodate individual juror schedules. I then read the names of potential witnesses, as well as the names of people who may be mentioned during the trial. I conclude my preliminary instructions by reading the following:

> "Now that you have heard my preliminary instructions, and some basic information about this case, if you have an honest, legitimate and good faith reason to believe that you cannot serve on this case, or that you cannot be fair and impartial, based solely upon what you have heard up to this point, please let me know now. Please do not wait until after you have been selected as a juror to tell me that you cannot serve or that you cannot be fair and impartial. The law gives me much greater discretion to excuse prospective jurors than it does to excuse sworn jurors.
> Having said that, please be advised that simply having work, school or childcare responsibilities alone, without more, will not suffice to excuse you from jury duty. Jury duty may at times be inconvenient but without more I will not excuse you.
> Again, if based solely upon what you have heard up to this point, you do not believe that you can be fair and impartial or you are unable to serve for any other reason, please let me know now by raising your hand."

I then invite those jurors who have self-identified and wish to be excused, to line up at the rail and approach the bench individually to explain why they believe they should be excused. We are joined at the bench by defense counsel, the prosecution, the court reporter, at least one or more court clerks or court officers and by the defendant, if they have not waived their Antommarchi rights. In my experience, the vast majority, if not all, of the jurors who have self-identified as unable to serve, are in fact excused at this stage for an assortment of reasons, not the least of which is bias in favor of or against one of the parties.

In the matter of the *People of the State of New York vs. The Trump Organization*, which I presided over in 2022, I proposed to the parties that we dispense with the step of interviewing every juror

---

allegations that would prevent them from being a fair and impartial juror. The purpose is *not* to instruct the jury on the law nor is it to present competing arguments.

who self-identified as unable to serve. Defense counsel objected and the Court deferred. While most Supreme Court trials typically involve one or two defense attorneys and one or two prosecutors, the *Trump Corporation* matter involved approximately four or more defense attorneys, an equal number of prosecutors, jury consultants and the necessary court personnel: a court reporter court officers and clerks. The process described above could not realistically be conducted at the bench, thus the individual interviews were conducted in the adjoining jury room. The process was time consuming and unproductive. Upon finishing the first jury panel, defense counsel informed the Court that they would consent to dispensing with the individual interviews. This decision accelerated the process significantly.

In the instant matter, in addition to the individuals identified above, we will be joined by the Defendant and the Secret Service. The jury room is not large enough to accommodate this expanded group, and the only other possible location is the courtroom. This would require moving all prospective jurors out to the 15th floor corridor. In a case where security concerns are implicated every time anyone enters or exits the courtroom, or mingles around the corridors, moving the entire jury panel is no simple task.

Against this backdrop, on February 15, 2024, this Court proposed eliminating the individual interviews of those jurors who self-identified as unable to serve. After some discussion, there was a suggestion by Mr. Blanche, counsel for the Defendant, that we implement a "hybrid" system, but no practical alternative was offered.

This Court finds, after careful consideration of the circumstances of this case, that requiring individual inquiry of every prospective juror who has *already* self-identified that they cannot be fair and impartial, or that they are otherwise unable to serve, is unnecessary, time consuming and of no benefit. This Decision is well within the Court's discretion. The First Department has held that it was not "error for the court to excuse several prospective jurors *sua sponte*, without any *voir dire* by counsel, since the court's own questions revealed that the jurors were unqualified," *People v. Mitchell*, 224 AD2d 316 [1st Dept 1996]; "the court properly exercised its discretion when, over defense objection, it excused a group of prospective jurors *sua sponte*, without *voir dire* by counsel, since these jurors' negative responses to the court's question as to whether they could be fair and impartial in the case revealed that they were unqualified;" *People v. Gayle*, 238 AD2d 133 - 134 [1st Dept 1997]; "Defendant's challenge to the court's *sua sponte*, pre-*voir dire* excusal of those prospective jurors who were uncertain of their ability to be fair … was an effective screening device and a proper exercise of discretion;" *People v. Boozer*, 298 A.D.2d 261 [1st Dept 2002]; "the defendant's contention that the *sua*

*sponte* pre-*voir dire* excusal by the County Court of those prospective jurors who were uncertain of their ability to be fair … was a proper exercise of the courts discretion;" *People v. McGhee*, 4 AD3d 485, 486 [2nd Dept 2004]. Additionally, eliminating the step results in no prejudice to the Defendant. "[A] trial court should lean towards disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion," *People v. Izzo III,* 104 AD3d 964, 966 [3rd Dept 2013] quoting *People v. Branch*, 46 NY2d 645, 651 [1979], because "even where the court errs on the side of caution, the worst the court will have done … is to have replaced one impartial juror with another impartial juror." *Izzo III* quoting *People v. Culhane*, 33 NY2d 90, 108 n3 [1973].

2. Instructions regarding the use of an anonymous jury.

On March 7, 2024, this Court issued its Decision and Order on the People's motion for a protective order regulating disclosure of juror information. The relevant So Ordered paragraphs read as follows:

> **ORDERED**, that the People's motion for a protective order restricting disclosure of the business or residential address of any prospective or sworn juror other than to counsel of record for either party pursuant to the provisions of CPL §270.15(1-a) is GRANTED; and it is further
>
> **ORDERED**, that the People's motion to prohibit disclosure of juror names other than to parties and to counsel is GRANTED as modified at the request of Defendant, to expand the universe of those permitted access to the names to include the staff and consultants of the respective parties; and it is further
>
> **ORDERED**, that the People and Counsel for the Defendant, shall jointly submit to this Court, no later than Friday, March 15, 2024, proposed neutral explanations and limiting instructions the Court may give to the jury to minimize any potential prejudice to either party. If the parties are unable to agree on the language of the proposals, then each party is to submit a separate proposal to the Court no later than Monday, March 18, 2024[.]

The parties were unable to come to an agreement and on March 18, the Court received separate proposed limiting instructions. As a preliminary matter, this Court notes that the process of summoning thousands of additional jurors and implementing the necessary measures to ensure that their identities remain anonymous is involved. This Court, together with the Commissioner of Jurors, for the County of New York, Hon. Milton A. Tingling, and others from the New York State Office of Court Administration, including the Clerk of the Court for New York County Supreme Court – Criminal Term, Chris DiSanto, have carefully formulated a plan which adheres to the Court's Order while at the same time ensuring that neither party suffers prejudice.

In his proposal, Defendant requests that his proposed instruction "not be read to jurors unless they express specific concerns about the public attention in this case." Defendant's submission of March 18, 2024, at pg. 2. The Court will certainly make every effort to not unnecessarily alert the jurors to the reality that this will be an anonymous jury. However, as a necessary measure to ensure anonymity, the prospective jurors must be given an instruction before they enter the courtroom, i.e. when they arrive in the Jury Room. The Commissioner of Jurors drafted an instruction which was reviewed and approved by this Court. In substance, the instruction merely informs jurors that they will be called and identified by the number printed on their jury summons.[2] The instruction is administrative only and does not address the anonymity issue.

Turning to the actual instruction that will be given in the courtroom if necessary, this Court has carefully considered both submissions. In crafting the Court's instruction, this Court was careful to "minimize any potential prejudice to either party." Defendant's submission pg. 2 citing *United States v. Paccione*, 949 F2d 1183 [2d Cir 1991] and *United States v. Tutino*, 883 F2d 1125 [2d Cir 1989]. It is also important that the instruction be truthful. The instruction shall be:

> The Court and both parties in this matter have agreed that your names will not be publicly disclosed. Further, your addresses will not be shared with anyone other than counsel for the parties. We are doing this to preserve your privacy and to protect your identities from members of the public. You must not draw any inferences, in favor of or against either party as a result of this Order.

3. The jury questionnaire and the permissible scope of *voir-dire*.

On February 21, 2024, Assistant District Attorney Steinglass ("ADA Steinglass") informed the Court that pursuant to the Court's request, the parties had "conferred further regarding the jury questionnaire and have reached agreement as to several of the proposed questions [but]… we continue to disagree and seek rulings from the Court as to the following questions …" ADA Steinglass then identified eight questions which remained in dispute. ADA Steinglass e-mail of February 21, 2024.

Criminal Procedure Law (hereinafter "CPL") § 270.15(1)(a) provides that jurors shall be called to the jury box "to answer truthfully questions asked them *relative to their qualifications to serve as jurors*." Emphasis added. Referring to the Court's questions, (in this case in the form of a questionnaire), CPL § 270.15(1)(b) provides that the Court shall put to the jury "questions affecting their *qualifications to serve* as jurors in the action." Emphasis added.

---

[2] A copy of the instruction is attached as Court's 2.

The Court has closely scrutinized all of the proposed questions submitted by both parties, including those which the parties have agreed to. Guided by settled legal authority and the requirements of the CPL, the Court has modified some questions and excluded others. The resulting questionnaire is broad and exhaustive.[3] It consists of 42 numbered questions, many of which contain multiple sub-questions, covering all relevant areas of inquiry. Please note, there are no questions asking prospective jurors whom they voted for or intend to vote for, or whom they have made political contributions to. Nor are jurors asked about their specific political party registration, though the answer to that question may easily be gleaned from the responses to the other questions. Counsel is forewarned not to seek to expand the degree of intrusion beyond what is relevant and has already been approved.

Turning to counsel's questions of the prospective jurors, the "court *shall not permit questioning that is repetitious or irrelevant*, or questions as to a juror's knowledge of the rules of law … the *scope of such examination shall be within the discretion* of the court." CPL § 270.15(1)(c) Emphasis added. [T]he trial court has broad discretion in determining the questions that are appropriately asked and to insure 'that the *voir dire* is not an *overly intrusive inquiry into the private affairs of prospective jurors for the purpose of obtaining personality profiles* ….[in other words] when the inquiry has no obvious relevance to actual bias or fair-mindedness, the inquiry should be disallowed. *United States v. Bellomo* 263 F Supp 2d 557, 560 [ED NY 2003] quoting *United States v. Serafini*, 57 F Supp 2d 108, 112 [MD Pa 1999] Emphasis added. Thus, contrary to defense counsel's arguments, the purpose of jury selection is *not* to determine whether a prospective juror likes or does not like one of the parties.[4] Such questions are irrelevant because they do not go to the issue of the prospective juror's qualifications. The ultimate issue is whether the prospective juror can assure us that they will set aside any personal feelings or biases and render a decision that is based on the evidence and the law. "'[M]ost if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities (a determination committed largely to judgment of the Trial Judge with

---

[3] The Juror Questionnaire is attached as Court's 3.

[4] "So whether we like it or not, a juror's political affiliation is something we need to know and understand … What we all really want to know, and what they [the People] want to know, is do you like President Trump? … The real simple question, if it comes to it is, have you donated to a political party? Yes. Which party? Transcript of February 15, 2024 pg. 47. "What we want to know [is] [w]ho is your political affiliation as relates to President Trump align with?" Transcript of February 15, 2024 pg. 48.

his peculiar opportunities to make a fair evaluation) that his excuse is warranted.'" *People v. Chambers*, 283 AD2d 904, 906 [4th Dept 2001] quoting *People v. Williams*, 63 NY2d 882, 885. [1st Dept 1984]. The Court will not permit unnecessary, repetitive or overly invasive questions.

Lastly, counsel is reminded that "[a] challenge for cause ... *may be made only* on the ground that: (a) [a prospective juror] does not have the qualifications required by the judiciary law; or (b) [the prospective juror] has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial[.]" CPL §270.20(1)(a)(b). Emphasis added. See *People v. Corbett*, 68 AD2d 772 [4th Dept 1979]. Indeed, it appears that counsel for Defendant is in agreement. "Of course the mere fact that someone is a Republican or a Democrat does not give either party, I would submit, the right to strike for cause." Transcript of February 15, 2024, pg. 48.

Very truly yours,

Juan M. Merchan
Judge Court of Claims
Acting Justice Supreme Court

cc:   Susan Necheles, Esq.
      Counsel of record
      ADA Susan Hoffinger
      Assistant District Attorneys of record
      Court file

# COURT'S 1

## PEOPLE V. DONALD TRUMP
## CASE SUMMARY

The Defendant, Donald Trump, is charged with 34 counts of Falsifying Business Records in the First Degree.

The allegations are in substance, that Donald Trump falsified business records to conceal an agreement with others to unlawfully influence the 2016 presidential election. Specifically, it is alleged that Donald Trump made or caused false business records to hide the true nature of payments made to Michael Cohen, by characterizing them as payment for legal services rendered pursuant to a retainer agreement. The People allege that in fact, the payments were intended to reimburse Michael Cohen for money he paid to Stephanie Clifford, also known as Stormy Daniels, in the weeks before the presidential election to prevent her from publicly revealing details about a past sexual encounter with Donald Trump.

Donald Trump has pleaded not guilty and denies the allegations.

# COURT'S 2

## PEOPLE V. DONALD TRUMP
## JURY ROOM INSTRUCTIONS

TO ALL PROPOSPECTIVE JURORS

PLEASE TAKE PART D OF YOUR JUROR SUMMONI LABELED JUROR 1 D

IN THE UPPER RIGHT-HAND CORNER OF PART D (JUROR I D), YOU WILL SEE A LETTER FOLLOWED BY A NO. (for example A 1 or B 200).

THE NO. FOLLOWING THE LETTER IS YOUR IDENTIFICATION NO.

YOU WILL BE CALLED AND IDENTIFIED BY THIS NO. ONLY. (UNLESS INSTRUCTED DIFFERENTLY BY THE COURT).

FOR EXAMPLE, IF THE NO. ON YOUR JUROR SUMMONS IS AI AND AI IS CALLED YOU WILL RESPOND AS IF YOUR NAME WAS CALLED.

# COURT'S 3

# JUROR QUESTIONNAIRE

Each juror who is seated in the jury box will be asked to answer the following 42 questions, beginning with the juror in seat number 1. Please do not read the questions aloud, that is not necessary. Simply state the number of the question and answer each question, one after the other, in a loud clear voice. Depending on your answer, we may ask you follow-up questions. When you are finished answering all the questions, we will move on to the next seated juror until every juror has had the opportunity to answer.

1. A. ***Without telling us your address***, in what neighborhood do you live? For example, Upper East Side, Lower West Side, Inwood, etc.
   B. How long have you lived there?
   C. Are you a native New Yorker? If not, where did you live previously?

2. A. What do you do for a living?
   B. How long have you been doing that?
   C. If you are retired, please tell us what you did before you retired.

3. A. Who is your current employer?
   B. How large is your current employer?
   C. Are you self-employed or own your own business?
   D. Who was your prior employer?

4. What is your educational background? For example, high school diploma, college degree, graduate degree, etc.

5. A. Are you married?
   B. Have you ever been married?
   C. Do you have any children?

6. A. If you are married, or living with another adult, what does that person do for a living?
   B. If you have adult children, what do they do?

7. A. What do you like to do in your spare time?
   B. Do you have any interests or hobbies?

1

8. A. Do you participate in any organizations or advocacy groups?
   B. Which ones?

9. A. Have you ever served on a jury before? If you did, please tell us how long ago that was and whether that was in Criminal Court, Civil Court, or Grand Jury.
   B. ***Without telling us the verdict***, please tell us whether the jury reached a verdict.

10. Which of the following print publications, cable and/or network programs, or online media such as websites, blogs, or social media platforms do you visit, read, or watch? (*Read aloud:*)

    | | |
    |---|---|
    | __ New York Times | __ Wall Street Journal |
    | __ USA Today | __ New York Post |
    | __ New York Daily News | __ Newsday |
    | __ Huffington Post | __ Washington Post |
    | __ CNN | __ Fox News |
    | __ MSNBC | __ Newsmax |
    | | __ MSN |
    | __ Google | __ Yahoo |
    | __ Facebook | __ Truth Social |
    | __ X | __ I do not follow the news |
    | __ Tik Tok | __ Other (name) |

11. Do you listen to or watch podcasts? If so, which ones?

12. Do you listen to talk radio? If so, which programs?

13. Have you, a relative, or a close friend ever been the victim of a crime? If so, please briefly tell us what happened?

2

14. Have you, a relative, or a close friend ever been employed by a law enforcement agency? For example, the police, FBI, District Attorney's Office, Department of Correction, etc.

15. Have you, a relative, or a close friend ever been employed by a federal, state, or any local government, including but not limited to the State of New York?

16. Have you, a relative, or close friend ever been employed in the accounting or finance field?

17. Have you, a relative or close friend ever had any education, training, or work experience in the legal field, including but not limited to practicing criminal or civil law?

18. A. Have you, a relative, or close friend had any experience or interaction with the criminal justice system, including a police officer or other type of law enforcement agent, which caused you to form an opinion, whether positive or negative, about the police or our criminal justice system?
    B. If so, what was that experience?
    C. Would that experience prevent you from being a fair and impartial juror in this case?

19. Have you, a relative, or a close friend ever been accused or convicted of committing a crime?

20. Do you, a relative, or a close friend have a pending criminal case?

21. A. Do you have any political, moral, intellectual, or religious beliefs or opinions which might prevent you from following the Court's instructions on the law or which might slant your approach to this case?
    B. Do you have any political, moral, intellectual or religious beliefs or opinions that would interfere with your ability to render a verdict in this criminal case?

3

22. Do you have a health condition that might interfere with your ability to be here on the appointed days and times or otherwise prevent you from serving as a juror?

23. *Without telling us the name(s)*, do you take any medication that would prevent you from being able to concentrate or pay attention during the proceedings or during the deliberations?

24. Court proceedings normally end around 4:30 in the afternoon though on rare occasions, we might work beyond that. Would your schedule and responsibilities permit you to work later if it were absolutely necessary to complete that day's work?

25. Do you practice a religion that would prevent you from sitting as a juror on any particular weekday or weeknight?

26. Can you give us an assurance that you will be fair and impartial and not base your decision in this case upon a bias or prejudice in favor of or against a person who may appear in this trial, on account of that person's race, color, national origin, ancestry, gender, gender identity or expression, religion, religious practice, age, disability, sexual orientation or political views?

27. Can you promise to guard against allowing stereotypes or attitudes about individuals or about groups of people, referred to as an implicit bias, influence your decision?

28. Have you, a relative, or a close friend ever worked for any company or organization that is owned or run by Donald Trump or anyone in his family?

29. A.  Have you, a relative, or a close friend ever worked or volunteered for a Trump presidential campaign, the Trump presidential administration, or any other political entity affiliated with Mr. Trump?
    B.  Have you ever attended a rally or campaign event for Donald Trump?

4

    C. Are you signed up for or have you ever been signed up for, subscribed to, or followed any newsletter or email listserv run by or on behalf of Mr. Trump or the Trump Organization?

    D. Do you currently follow Donald Trump on any social media site or have you done so in the past?

    E. Have you, a relative, or a close friend ever worked or volunteered for any anti-Trump group or organization?

    F. Have you ever attended a rally or campaign event for any anti-Trump group or organization?

    G. Are you signed up for or have you ever been signed up for, subscribed to, or followed any newsletter or email listserv run by or on behalf of any anti-Trump group or organization?

    H. Do you currently follow any anti-Trump group or organization on any social media site, or have you done so in the past?

30. Have you ever considered yourself a supporter of or belonged to any of the following:
    - the QAnon movement
    - Proud Boys
    - Oathkeepers
    - Three Percenters
    - Boogaloo Boys
    - Antifa

31. Do you have any strong opinions or firmly held beliefs about whether a former president may be criminally charged in state court?

32. Do you have any feelings or opinions about how Mr. Trump is being treated in this case?

33. Can you give us your assurance that you will decide this case solely on the evidence you see and hear in this courtroom and the law as the judge gives it?

34. Do you have any strong opinions or firmly held beliefs about former President Donald Trump, or the fact that he is a current candidate for president that would interfere with your ability to be a fair and impartial juror?

35. Have you read (or listened to audio) of any of the following books or podcasts by Michael Cohen or Mark Pomerantz? If so, please let us know if what you have heard or read affects your ability to be a fair and impartial juror in this case.

    __ Disloyal: A Memoir (2020)     __ Revenge (2022)

    __ Mea Culpa (the podcast)       __ People Vs. Donald Trump (2023)

36. The defendant in this case has written a number of books. Have you read (or listened to audio) of any one or more of those books? If so, which ones?

37. Do you have any opinions about the legal limits governing political contributions?

38. Can you promise to set aside anything you may have heard or read about this case and render your verdict based solely on the evidence presented in this courtroom and the law as given to you by the judge?

39. Can you give us your absolute assurance that you will refrain from discussing this case with anyone in any manner and from watching, reading, or listening to any accounts of this case during the pendency of the trial?

40. Can you assure us that you will follow the judge's instructions on the law, including instructions on the definition of reasonable doubt and the presumption of innocence?

41. The United States Constitution provides that a defendant has no burden to introduce any evidence or to testify in a criminal case. If Mr. Trump chooses not to testify or to introduce any evidence, can you give us your assurance that you will not hold that against him?

42. Is there any reason, whether it be a bias or something else, that would prevent you from being fair and impartial if you are selected as a juror for this case?