UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-80116-CR-CANNON

**UNITED STATES OF AMERICA**,

v.

**RYAN WESLEY ROUTH,**

    Defendant.
_____/

ORDER GRANTING IN PART AND DENYING IN PART
UNITED STATES' MOTION TO ADMIT POTENTIAL RULE 404(b) EVIDENCE

**THIS MATTER** comes before the Court upon the United States' "Motion to Admit Potential Rule 404(b) Evidence" (the "Motion") [ECF No. 122]. Upon review of the Motion, Defendant's Response [ECF No. 137], and the United States' Reply [ECF No. 144]—and with the benefit of oral argument [ECF No. 163]—the Motion is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.[1]

BACKGROUND AND PROCEDURAL HISTORY

Trial is set to begin on September 8, 2025 [ECF No. 91]. Defendant is alleged to have committed the following five offenses: (1) attempted assassination of a major presidential candidate, in violation of 18 U.S.C. § 351(c) (Count 1); (2) possession and brandishing of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2); (3) assault of a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count 3); (4) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 4); and

---

[1] Nothing in this Order should be construed to be inconsistent with Defendant's full presumption of innocence.

(5) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count 5) [ECF No. 21].

In the instant Motion, the United States seeks a pre-trial ruling to admit evidence potentially subject to Federal Rule of Evidence 404(b) [ECF No. 122]. The evidence falls into various categories, only the following of which remain in dispute after briefing and oral argument.[2]

- Defendant's WhatsApp text messages in February 2024 with a contact in Mexico named "Ramiro" [ECF No. 144-1 pp. 2–14];

- Certain items contained in a box delivered by Defendant to a former coworker/friend in North Carolina in April 2024, plus additional items recovered from a nearby storage trailer linked to Defendant (specifically, components of an improvised destructive device, .50 caliber ammunition, and a manual on how to build a homemade explosive device);[3]

---

[2] Subject to additional trial-specific objections (authentication, hearsay, or other evidentiary rules beyond Rule 404(b) and relevance), the evidentiary categories on which the parties agree in the Motion are: (1) Defendant's travel to and activities in West Palm Beach in late March/early April 2024 [ECF No. 122 pp. 6–8 & n.2; ECF No. 137 p. 5; ECF No. 144 p. 1]; (2) Defendant's WhatsApp text messages in September 2024 with a Mexican contact named "Ramiro" [ECF No. 144-2; ECF No. 144 p. 2]; (3) Defendant's attempted purchase of anti-aircraft weapons in August 2024 [ECF No. 137 p. 10; ECF No. 144 p. 5]; (4) Defendant's attempted purchase of a .50 caliber rifle and other firearms in August 2024 [ECF No. 137 p. 10; ECF No. 144 p. 6]; and (5) Defendant's use of aliases, flight from the sniper hide, and possession of stolen license plates in August–September 2024 [ECF No. 137 p. 10; ECF No. 144 p. 6].

[3] The United States proffered at the hearing that the box contained copies of a so-called "Dear World" letter written by Defendant; four burner cellular phones purchased and used by Defendant during an alleged reconnaissance trip to West Palm Beach in March/April 2024 (plus documents associated with purchases of those burner phones); registration documents for the Nissan Xterra in which Defendant was allegedly arrested on the date of the charged offenses; components of a potential destructive device as determined by an ATF expert (i.e., spring-loaded pipes with a "barrel breech and firing mechanism" containing a .50 caliber bullet); five or six loose .50 caliber rounds of ammunition; and miscellaneous tools and hardware-type items, including "mouse traps, various spray-painted green items, and things of that nature" [ECF No. 144-3 (picture/diagram of potential destructive device); ECF No. 163 pp. 78–83]. The nearby trailer, which Defendant is alleged to have used to store personal items and also to conduct a former roofing business, contained a manual entitled "Improvised Explosives: How to Make Your Own" (hereinafter, "I.E.D. Manual"), shotgun shells, a box for a pistol, and other personal items [ECF No. 163 pp. 83–

- Defendant's prior 2002 felony conviction for possessing a weapon of mass destruction [ECF No. 144-5; ECF No. 140-1];[4] and

- Evidence of Defendant's prior possession of firearms not the subject of felony convictions, as reflected in three still-contested subsidiary incidents/statements or portions thereof [ECF No. 122 p. 19 (describing sub-incidents)].

The Court made rulings on the record as to these categories during the hearing on May 14, 2025 [ECF No. 163 pp. 71–107] and hereby further memorializes those rulings with further explanation and clarification, focusing on the areas of disagreement between the parties. Any evidentiary categories as to which the parties agree—as listed above—are not further detailed in this Order. *Supra* n.2.

## LEGAL STANDARDS

Federal Rule of Evidence 404(b) provides that evidence of other "crime[s], wrong[s], or act[s] is not admissible to prove a defendant's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Such evidence may be admissible for other purposes, however, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. For evidence

---

84; *see* ECF No. 163 pp. 88–89 (United States proffering additional details regarding Defendant's continuing and recent control over storage trailer as reflected, for example, by recent jail communications in which Defendant gave his daughter the passcode of the trailer and directed her to obtain items from the trailer)]. As for the April 2024 box, Defendant does not challenge the United States' Motion with respect to the "Dear World" letter, the burner phones, or the paperwork found therein—instead focusing his challenge on the potential destructive device and the .50 caliber ammunition [ECF No. 163 pp. 82–83; *see* ECF No. 137 p. 9]. As for the trailer, Defendant directly challenges the Motion with respect to the I.E.D. manual and raises a general factual dispute concerning his connection to the trailer [ECF No. 137 p. 9; ECF No. 163 p. 88].

[4] Defendant's prior felony convictions for possessing stolen property are not the subject of the United States' Motion [ECF No. 122 p. 17 n.10; ECF No. 140-2; ECF No. 163 p. 90 (United States representing no intent to introduce stolen-property convictions except as appropriate during cross-examination or in response to defense argument/evidence)].

of other crimes or acts to be admissible under Rule 404(b), "(1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). "But evidence of criminal activity other than the charged offense is not 'extrinsic' under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Id*. (internal quotation marks omitted)).

To determine whether evidence falls outside the scope of Rule 404(b), the Eleventh Circuit instructs to evaluate whether the evidence, although "not part of the crime," nevertheless "pertain[s] to the chain of events explaining the context, motive, and set-up of the crime," is "linked in time and circumstances with the charged crime," or "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Id*. (internal brackets omitted). "And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" *Id*. (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

In either case—whether extrinsic evidence subject to Rule 404(b) or intrinsic evidence to the charged acts—the evidence of "other crimes, wrongs, or acts" still must satisfy the requirements of Rule 403, which permits exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presently cumulative evidence." *Id*.; Fed. R. Evid.

403, 404(b). Rule 404(b) is a "rule of inclusion," whereas exclusion under Rule 403 is an "extraordinary remedy" to be used "sparingly." *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009); *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) ("The balance under the Rule [403], therefore, should be struck in favor of admissibility. Accordingly, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (internal quotations and citations omitted)).

## DISCUSSION

The Court addresses each of the still-contested areas in the Motion in turn. A clarification to the Court's oral ruling as to the I.E.D. manual is contained below.

**1. Defendant's WhatsApp text messages with Ramiro in February 2024.**

The United States seeks to admit February 2024 text messages between Defendant and an individual in Mexico named Ramiro [ECF No. 122 pp. 8–10]. These messages appear to reflect Defendant attempting to have Ramiro assist him in the illegal transportation of an Afghani family into the United States through Mexico [ECF No. 144-1 pp. 1–14 (discussing the cost of a border crossing, the family's immigration status, and making payments to law enforcement to "fix" any potential problems); ECF No. 122 p. 8]. This batch of text messages ends on February 29, 2024, with Defendant questioning Ramiro's proposed price for the border crossing [ECF No. 144-1 p. 14]. There is then a break in the messages until September 13, 2024, when Defendant reinitiates contact with Ramiro, advising Ramiro that he (Defendant) "may come to visit soon" in Mexico and that he "may be in Mexico City on Monday" [ECF No. 144-1 pp. 14–16 (also inquiring on Ramiro's specific whereabouts); ECF No. 144-2 (same)].

The United States argues that the entire chat with Ramiro from February 2024 and September 2024 constitutes intrinsic evidence of Defendant's attempt to assassinate then-candidate President Trump, because they show his planned flight from law enforcement after committing the

5

alleged crimes [ECF No. 122 pp. 8–9]. The United States further argues that the February messages are necessary for the jury to understand the September 2024 messages and contextualize Defendant's relationship with Ramiro [ECF No. 122 p. 9; *see* ECF No. 144 p. 2; ECF No. 163 pp. 73–75]. Defendant does not object to admission of the September messages but does object to the admission of the February messages [ECF No. 137 pp. 5–6].

For the reasons stated at the hearing [ECF No. 163 pp. 72–77], the Court concludes that the United States has not sufficiently established the relevance of the February 2024 messages to the charged crimes. These messages concern an unrelated topic of alleged alien smuggling, which even if tangentially relevant to bolster Defendant's overall travel capabilities in connection with the United States' theory of flight, do appear to inject into the case a risk of unfair prejudice that is unnecessary given the other proffered evidence of flight [ECF No. 137 pp. 6–7]. Accordingly, the Motion is **DENIED** as to the February 2024 text messages, to be revisited if necessary at trial depending on other evidence or developments.

2. **Components of an improvised destructive device and .50 caliber ammunition contained in a box delivered by Defendant to former coworker/friend in April 2024, along with an I.E.D. manual found in storage trailer nearby.**

The next disputed topic concerns items that were contained in a box seized from an individual's home—where Defendant delivered the box in April 2024—as well as an I.E.D. manual located in a nearby trailer over which the United States represents Defendant retained continuing control [ECF No. 122 pp. 10–11]. As explained above, Defendant delivered the box to a former coworker/friend after Defendant's alleged reconnaissance trip to Florida in late March 2024 / early April 2024 [ECF No. 163 pp. 78–79]. *See supra* p. 2 n.3 (detailing contents of box). The still-contested items at issue for this Motion are (1) components of a destructive device found in the box containing a .50 caliber round [ECF No. 144-3 (diagram/picture)]; (2) approximately six additional rounds of loose .50 caliber ammunition, also recovered from the box; and (3) a manual

on how to build improvised explosive devices (I.E.D.s), which was located in a storage trailer a few blocks away [ECF No. 163 pp. 81–89]. As described by the United States, an ATF expert described the components of the destructive device as a "series of spring-loaded pipes" with a .50 caliber bullet inserted in the pipe [ECF No. 163 pp. 80–81].

The United States argues that this evidence is intrinsic evidence of Defendant's intent to assassinate then-candidate Trump and is also inextricably intertwined with the Defendant's "Dear World" letter (also found in the box) and Defendant's reconnaissance trip to Florida [ECF No. 122 p. 10; ECF No. 163 p. 83]. The United States also argues that the .50-caliber ammunition further explains Defendant's later attempts to obtain a .50-caliber sniper rifle and is relevant and admissible evidence of Defendant's intent and absence of mistake under Rule 404(b) on the firearm-possession charges (especially Count 4, unlawful possession of ammunition) [ECF No. 122 p. 13; *supra* n.2 (noting lack of objection as to Defendant's attempted purchase of .50 caliber rifle)]. As noted above, Defendant does not challenge the Motion as to certain items contained in the box, including, for example, the "Dear World" letter found in the box. *Supra* n.3. But Defendant nevertheless insists that the components of the destructive device and the .50 caliber ammunition are improper propensity evidence that are too attenuated in time and location to the charged crimes and fail the requirements of Rule 403 [ECF No. 137 pp. 8–9; ECF No. 163 p. 86].

Consistent with the Court's ruling during the hearing, the Court agrees with the United States that the contested items of evidence found in the 2024 box are intrinsic evidence directly related to the pivotal question of intent on Count 1 as well as the firearm possession charge in Count 4. The box contained various items directly tied to Defendant's alleged substantial planning and preparation for an assassination of then-candidate Trump, including the "Dear World" letter reflecting Defendant's alleged intentions to assassinate Trump, burner phones purchased during Defendant's reconnaissance trip to West Palm Beach in March/April 2024, and the vehicle in which

Defendant was allegedly found while attempting to flee on the charged offense date [ECF No. 25-6]. *Supra* p. 2 n.3.  By the same token, these items are clearly inextricably intertwined with other evidence regarding the charged offenses, including, for example, Defendant's attempted purchase of a .50 caliber rifle.  Defendant's attempt to parse out the various items in the box on the basis of generalized Rule 403 arguments fail [*see* ECF No. 163 p. 87].[5]  And to the extent Defendant wishes to challenge the weight to be given to the items in the April 2024 box more specifically, either based on temporal connection to Defendant or otherwise [*see* ECF No. 137 p. 9], he may do so at trial through cross-examination and argument [ECF No. 163 pp. 89–90].

Turning to the I.E.D. manual found in the storage trailer, the Court modifies its oral ruling as follows.  Although it appears there is substantial proof to connect Defendant to the trailer on an ongoing and recent basis [ECF No. 163 p. 89], and although the United States makes a compelling argument in favor of the manual's admissibility to show the key element of intent on Count 1, the arguments tying the manual to the charged crimes are less clear at this stage.  Hence, the Court elects to reserve ruling on this matter pending a more holistic assessment of the evidence/theories presented at trial, subject to any additional objections.  This is a clarification on the Court's oral ruling and should be treated as such.  The United States' Motion on this topic is therefore **GRANTED** in part and/or reserved for trial as noted herein.

3. **Defendant's past felony convictions**.

The United States seeks to admit, pursuant to Rule 404(b), Defendant's 2002 felony conviction for possessing a weapon of mass destruction ("WMD") [ECF No. 122 pp. 17–18;

---

[5] *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) (noting that Rule 403 is not meant to "sanitize[]" the facts or "to permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none"); *United States v. Dixon*, 698 F.2d 445, 446 (11th Cir. 1983) (observing that Rule 403 creates "no requirement that the government choose the least prejudicial method of proving its case"); *United States v. Watchmaker*, 761 F.2d 1459, 1471 (11th Cir. 1985) ("This Circuit has repeatedly held that Rule 403 should be applied sparingly.").

ECF No. 140-1; ECF No. 144-5]. Subsequent to the Motion, Defendant agreed to stipulate to his status as a felon prior to the charged offenses and to his knowledge of that status [ECF No. 173-1; *see* ECF No. 137 p. 10 (previewing stipulation)]. Despite that stipulation, the United States submits that admission of the 2002 WMD felony conviction is appropriate under Rule 404(b) to prove Defendant's intent to kill on Count 1 [ECF No. 122 pp. 17–18; ECF No. 163 pp. 91–92 (explaining intent to introduce prior conviction through certified records and officer testimony from underlying crime); ECF No. 163 p. 93 (arguing that Defendant's prior WMD conviction shows Defendant's intent to kill, his willingness "to go to extraordinary measures by having a weapon of mass destruction designed to kill and maim," and "his capacity to and affinity and facility with items that cause major destruction in a very public way, which is quite similar to the attempted assassination in this case")]. Defendant opposes introduction of the 2002 WMD conviction, arguing that its prejudicial impact is severe, the conviction is over 20 years old, and the United States is using the conviction as improper propensity evidence [ECF No. 137 pp. 11–12; ECF No. 163 p. 94].

In accordance with the Court's ruling in open court during the hearing, the Court determines under the circumstances to defer ruling on this issue pending further understanding of the defenses to be raised at trial and consideration of how those defenses may or may not impact the admissibility of the subject conviction under Rule 404(b) [ECF No. 163 pp. 94–95]. The Court therefore **DEFERS** as to this aspect of the United States' Motion.

4. **Defendant's prior possession of firearms not the subject of felony convictions**.

The United States lastly seeks to introduce, through Rule 404(b), evidence of uncharged prior instances in which Defendant possessed firearms to show his "facility with and affinity for especially dangerous firearms of the kind he ultimately used" in his alleged assassination attempt

in this case [ECF No. 122 pp. 18–19]. The still-challenged instances are summarized in greater detail in the United States' Motion [ECF No. 122 p. 19] and described briefly below:

- <u>April 2022:</u> a text in which Defendant wrote "I ow[n]ed an ak47 in [N]orth Carolina and a tech 9 and a bunch of guns . . . police ended up with them all" [ECF No. 144-4];

- <u>April 2002</u>: an incident in which Defendant purportedly possessed a sawed-off shotgun and was arrested for allegedly threatening others (charge later dismissed); and

- <u>December 2002</u>: an incident reported by multiple sources but not charged in which Defendant purportedly possessed an Uzi-style submachine gun and an SKS rifle that is the same make, model, and caliber of the SKS rifle seized in this case [ECF No. 163 p. 101].

In Response, Defendant objects as follows: (a) Defendant objects only to the second part of the April 2022 text, which reads "police ended up with them all"; and (b) Defendant objects to both the April 2002 and December 2002 incidents because they would lead to a "trial within a trial," they are temporally attenuated, and they include unproven, unreliable allegations. [ECF No. 137 pp. 13–14].

At the hearing, the Court agreed with Defendant on the April 2022 text message topic, directing the United States to redact the last phrase "police ended up with them all" from the exhibit [ECF No. 163 pp. 98–99; ECF No. 144-4]. As to the April and December 2002 incidents, the Court expressed concern that they pose a risk of undue delay and confusion [ECF No. 163 p. 101]. Ultimately, the Court took the matter under advisement [ECF No. 163 p. 104].

Upon further consideration, the Court concludes at this stage that the April and December 2002 incidents likely should not be introduced at trial, subject to reconsideration if a defense or material development warrants reassessment. Although potentially relevant to Counts 2, 4, and 5, the status and particulars of these sub-incidents—all of which stem from reported conduct twenty-three years ago—create a material possibility of confusion and undue delay, apart from

Defendant's claims of unfair prejudice. Nor is the Court in a position to say now that the United States has met the predicate threshold requirement of proof for these incidents.[6]

Accordingly, the United States' Motion is **GRANTED IN PART** insofar as it seeks to admit the April 2022 text message (subject to the redaction explained above) and otherwise **DENIED** without prejudice.

## CONCLUSION

For the reasons stated above, it is **ORDERED** and **ADJUDGED** that the United States' Motion to Admit Potential Rule 404(b) Evidence [ECF No. 122] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

**ORDERED** in Chambers in Fort Pierce, Florida, this 23rd day of June 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[6] It is a closer question whether to admit Defendant's alleged possession of a Norinco SKS rifle and scope, 7.62 caliber in December 2002—represented to be the same make and model of the firearm allegedly possessed in the instant Indictment [ECF No. 163 pp. 101–102]. Consideration of that issue at trial on a narrower basis may be warranted, pending further information about the defenses to be raised.