UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON

UNITED STATES OF AMERICA,
     Plaintiff,

     vs.

RYAN WESLEY ROUTH,
     Defendant.

_____/

## DEFENDANT RYAN ROUTH'S RESPONSE TO THE GOVERNMENT'S MOTION TO EXCLUDE DEFENSE EXPERT (DE 167)

The Defendant Ryan Routh, through counsel, responds to the government's Motion to Exclude Defense Expert to prohibit Mr. McClay to "voice any opinion." DE 167:13. The Government's attempt to preclude any defense expert testimony to impeach and rebut two of their nine listed experts is without merit.

> In the law, 'what's sauce for the goose is normally sauce for the gander,' and we 'have applied this commonsense principle of equal treatment in the context of expert witnesses.' It is therefore 'an abuse of discretion to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue.' This principle, we think, also applies when the Defense wants to present expert testimony to counter factual testimony and/or lay opinions offered by government witnesses.

*United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024) (quoting *United States v. Knowles*, 889 F.3d 1251, 1257–58 (11th Cir. 2018) and *United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1993)) (internal citations omitted).

While the Government may desire to strip the Defendant of his right to call an expert and/or rebut their expert testimony, the United States Constitution and

Federal Rules of Evidence provide otherwise. The expert disclosure, if even necessary as impeachment, in no manner violates Federal Rule of Criminal Procedure 16 nor any rule of Evidence. Mr. Routh has the right under the Fifth Amendment Due Process Clause and the Sixth Amendment right to present a defense, and this Court should not allow the government to hinder his ability to mount a defense and, critically, to rebut government expert witnesses. Finally, should Mr. McClay be excluded, Mr. Routh submits that due process requires the exclusion of the government's firearms experts as well.

APPLICABLE FACTUAL HISTORY

The Government filed their expert disclosures. On November 17, 2023, the government noted eight expert opinions, including of;

i.      Erich D. Smith, FBI Firearms/Toolmark Examiner

The summary of testimony/opinion and basis of his testimony included, "The reports produced on November 13, 2024, as part of the Government's Second Response to the Standing Discovery Order [D.E. 71] at Bates Number Gov004318-4357 and Bates Number GovExp000324-330 contain a summary of Examiner Smith's anticipated opinions and basis and reasons for those opinions." As mentioned in court, the government expects Mr. Smith to testify that the rifle in question is operable.

ii.     Special Agent, Federal Bureau of Investigation, Special Weapons and Tactics Team

The Government indicated that they "anticipate(s) calling an expert witness to testify from his or her special weapons and tactical expertise regarding the Defendant's activities and positioning in connection with his attempted shooting of

the victim. This witness's name, qualifications and past testimony will be provided upon identification of this witness." For the summary and basis of this agent's testimony, the government stated that

> This witness will testify regarding, among other things, the Defendant's observation point, also known as the final firing point ("FFP"); Defendant's reconnaissance, selection, measurement, and "up-armoring" of the FFP; the contents and tactical significance of Defendant's notes and Internet research relating to measurement and targeting; as well as capacity of weapons system(s) seized from the crime scene. This witness will also testify regarding how and why a vantage point is desirable for a particular target, the factors that can affect a shot, the capacity of the weapon to include, the quantity of ammunition that can be stored and caliber and operation of the weapons system. This witness will testify about methods employed to avoid detection and sustainment of Defendant's FFP. This witness will define terms of art in this field to include, "hold over," "hold off," "known zero," "magnification level of the optic," "scope," "rifle," "point of aim," "point of impact," "standard deviation of the weapon," "detachable box and fixed magazines," and "sporterized."

On February 3, 2025, the Government disclosed three additional expert opinions, including of

iii.    Nicholas Schnelle, FBI Special Agent, Special Weapons and Tactics Team

The government stated the summary of his testimony and opinion as

> Special Agent Schnelle will, as the Government indicated in its initial expert disclosure, testify from his extensive special weapons and tactical expertise and training regarding the Defendant's activities and positioning in connection with his attempted shooting of the victim. This witness will testify regarding, among other things, the Defendant's observation point, also known as the final firing point ("FFP"); Defendant's reconnaissance, selection, measurement, and "up-armoring" of the FFP; the contents and tactical significance of Defendant's notes and Internet research relating to measurement and targeting; as well as capacity of weapons system(s) seized from the crime scene. This witness will also testify regarding how and why a vantage point is desirable for a particular target, the factors that can affect a shot, the capacity of the weapon, the quantity of ammunition that can be stored and caliber and operation of the weapons system. This witness will testify about methods employed to avoid

detection and sustainment of Defendant's FFP. This witness also will define terms of art in this field.

For example:

*Location of Final Firing Point:* The position chosen by the Defendant located outside the chain link fence and in line with a mostly unobstructed view of the 6th and 7th holes as a place to wait for President Trump to arrive was a good sniper "hide," also known as a final firing point. The location chosen by Routh provided a relatively easy shot at President Trump on the 6th hole even without a "zeroed" rifle scope or with iron sights because the cart path that the President would have driven on, as well as the 6th green and hole flag, were a close distance away from his location. The 6th hole was an optimal target location from Routh's sniper hide. Additionally, Routh had a relatively unobstructed view of the 7th fairway and green and the 7th hole flag from Routh's location along the fence line.

Routh's chosen location had 360-degree concealment, and he would not have been seen by those on Summit Road or the 6th green because of the natural vegetation providing cover. The armor plates that were placed inside the tote bag and backpack attached to the fence with enough space between the placement of the two bags for a clear view shooting position, the loaded firearm that contained a magazine that could contain 30 rounds of ammunition with a round already in the chamber, the safety being off, and Routh's choice to position himself outside of the golf course with his vehicle parked close by, indicate that Routh was prepared to start a gunfight in a defensible position with an easy escape route. The position taken on the outside of the golf course was optimal for Routh's ability to balance shooting with getting away without harm. Items listed by Routh including a poncho, bug spray, and "quiet" plastic show that he was willing to position himself there for long periods of time and wanted items that would permit him to do so even in adverse and changing conditions.

*The SKS Rifle:* Routh's firearm recovered from the sniper hide was a Norinco SKS rifle made in China, that had a 30 round detachable box magazine inserted into the rifle. There were 11 rounds in the magazine and one round in the chamber for a total of 12 rounds. The witness is familiar with this type of weapons platform based upon his training and experience in the field, including deployments to Afghanistan. The rifle is a gas operated semi-automatic shoulder fired weapon that shoots a 7.62 x 39 mm round. It is semi-automatic because every time the trigger is depressed a round is fired. It is gas operated because a portion of high-pressure gas from the cartridge being fired is used to power a mechanism to extract the spent case and insert a new cartridge into the chamber so the individual is not required to cycle the action manually like on a bolt action rifle. In other words, a round can be fired as fast as an individual can pull the trigger. The SKS rifle and the similar AK-47 are Soviet style weapons platforms that are relatively easy and cheap to purchase in the United States. The close location of the cart path and the green to the

4

6th hole, and the number of rounds in the magazine, meant that anyone with any degree of familiarity with this rifle could have hit a target at those locations, among others. Because a round was located in the chamber, Routh had at minimum some degree of familiarity with this weapon and understood that the rifle would not have fired unless a round was in the chamber as opposed to just being loaded into the magazine and inserted into the rifle without cycling the action to insert a round. The use of a high-capacity magazine allowed more rounds to be fired at the target, and the chain link fence could have been used to stabilize the weapon for firing. According to Special Agent Schnelle's training and experience Routh would have been able to acquire his target and fire all of the rounds in the magazine in a matter of seconds.

To rebut these opinions, the Defense filed its Expert disclosure on March 28, 2025 and on May 30, 2025 after the operability testing per DE 128. Notably, if the Court compares the disclosures side by side, it will become apparent that the Defendant styled his expert notice after that of Special Agent Schnelle because the Defendant's proposed expert is the same type of expert[1]. Nevertheless, the government now objects to the Defendant's expert's testimony.

---

[1] While the government attempts to discredit the Defense expert for his current employment as commercial airline pilot, this disparagement is unwarranted. He served our country in the United States Marine Corps for eight years, including leading ground combat operations and as a team leader, chief scout, and platoon sergeant. For his outstanding achievement and meritorious service in Iraq, he was awarded the Navy Achievement Medal. After graduating from the USMC Scout Sniper School, including the basic, urban scout, urban reconnaissance, and advanced programs, he became a Chief Instructor. He then served in National Guard for 14 years, including domestic and international deployment to Afghanistan and Iraq, and as a law enforcement officer in two states for 9 concurrent years.  Veterans, who served our country for over two decades, cannot and should not be discounted for their indispensable knowledge and experience. If so, the Government would strip the Defense from the ability to hire any expert in this field as current military officers and contractors advised the Defense that they have a conflict in this case because the President of the United States is the alleged victim and also the Commander-in-Chief. As such, the Defense contracted with a civilian veteran to testify as an expert.

ARGUMENT

"Few rights are more fundamental than that of an accused to present witnesses in his own defense. Indeed, this right is an essential attribute of the adversary system itself." *Taylor v. Illinois*, 484 U.S. 400, 408, (1988) (internal citations omitted). Glaringly omitted from the Government's motion is the recent decision from the Eleventh Circuit in *United States v. Graham,* 123 F.4th 1197 (11th Cir. 2024), where, in December of last year, the Court vacated a multi-defendant, 38-day trial where the trial court erroneously excluded the Defendant's expert based on three grounds made by the government, all of which were "mistaken on either the facts, the law, or both." *Graham* held that where the government presents expert evidence to support a certain theory, a defendant is entitled to rebut that theory with expert evidence of his own. *United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024) (citing *United States v. Word*, 129 F.3d 1209, 1212-13 (11th Cir .1997) (reversing conviction because the Defendant "was not afforded the opportunity to present evidence to counter the government's argument," as the government's "trial strategy made this defense evidence highly significant"); *see also Panger v. Duluth, Winnipeg & Pac. Ry. Co.,* 490 F.2d 1112, 1117 (8th Cir. 1974) (explaining that, where the plaintiff offered a lay opinion in his own testimony, "the Defendant should have been accorded the right to counter that evidence with either factual evidence of its own or properly proffered expert testimony"). To be clear, "It is an abuse of discretion to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion

of his adversary's expert on the same issue." *United States v. Gaskell,* 985 F.2d 1056, 1063 (11th Cir. 1993).

Any incongruence in disclosure is simply a function of the burdens of proof in a criminal case. *United States v. Mehta*, 236 F. Supp. 2d 150, 156 (D. Mass. 2002), *see also United States v. Robinson*, 44 F. Supp. 2d 1345, 1347 (N.D. Ga. 1997) (Stating that "a defendant…is never required to introduce any evidence, and therefore, the Defendant has a right to predicate a trial strategy…on an attack (upon) the opinion evidence offered by the government"). Of course, the Court will take great care in evaluating the government's motion to exclude as, "Time and again, courts (including ours) have held that when a defendant's expert was wrongfully excluded, and that expert sought to rebut the government's own expert on a central issue (e.g., an element of the offense), the error was prejudicial." *United States v. Graham*, 123 F.4th 1197, 1272 (11th Cir. 2024).

I.     The Defense Expert Disclosure does not Violate Rule 16

Defense complied with both Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) and Local Rule 88.10(o)(3). Even though the Defense expert is primarily being used for impeachment and rebuttal, the Defense gave notice of their expert, qualifications, prior testimony, and opinions and bases/reasons and complied with the Court's deadlines for Defense expert disclosures. *But see United States v. Petrie,* 302 F.3d 1280, 1288 (11th Cir. 2002)(exclusion upheld when the Defense disclosed the expert the Friday before a Monday trial older than a year and a half) and *United State v. Johnson,* 219 F.3d 349, 358 (4th Cir. 2000) (exclusion upheld when Defense only gave

an expert's resume). If the government's confusion about the expert is genuine, then it is notable that the government made no attempts to confer with undersigned counsel to clear any misunderstanding, nor did the government request any additional information of our expert. This is likely because the Defense expert disclosure mirrors that of the government, tracks their expert's disclosure language, and mainly seeks to rebut the Government's expert's testimony. The Defense Expert Disclosure does not violate the Federal Rules of Evidence.

       *i.*    *Daubert*

The Government is not making a genuine *Daubert* challenge. The Defense expert is testifying in the same fields as the government experts. This proposed testimony would "assist the trier of fact" to understand the evidence. *United States v. Frazier,* 387 F.3d 1244, 1262 (11th Cir. 2004). The principles of *Daubert* apply to those with technical and other specialized knowledge. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 151 (1999). Those types of experts are not required to present formal "opinions," but rather can provide "background information on a particular issue…" *See* Fed. R. Crim. P. 16 Advisory Comm. Notes, 1992 Amend.

The fallacy of the government's *Daubert* challenge is apparent where they are not challenging nor requesting a hearing to contest the expert's field of testimony and whether it would be accepted in the community or previously precluded. *See e.g. United States v. Scheffer,* 523 U.S. 303 (1998)(discussing the validity of polygraph testing). Finally, the Motion is untimely, as the Order Setting Additional Pre-Trial Deadlines and Instructions, DE 109, stated that all *Daubert* motions were due on

8

April 29, 2025. The government filed this motion more than a month late, without requesting the leave of the Court to file after the deadline and without conferring with undersigned counsel regarding our position.

  ii.  Relevance

Rebuttal witnesses are always relevant, as the question of relevance was established during the presentation of the government's evidence. "The underlying rationale [of rebuttal evidence] is that when [a party] has opened the door to a line of testimony by presenting evidence thereon, he cannot object to the [opposing party] accepting the challenge and attempting to rebut the proposition asserted." *United States v. Hall,* 653 F.2d 1002, 1006 (5th Cir. 1981) cited in *States v. Frazier*, 387 F.3d 1244, 1270 (11th Cir. 2004).

  The Government cannot utilize Rule of Evidence 401 to exclude an expert witness testifying regarding the same topic as their own. Evidence is relevant if it has, "Any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The Eleventh Circuit has explained that the standard for what constitutes relevant evidence is a low one. *See United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024). Further, under Federal Rule of Evidence 702, expert testimony is permitted when "other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact at issue." Here, the Government proposes to use a former military expert to explain the shooter's positioning activities. As such, the Defense should likewise be permitted to introduce an expert to impeach the government's

9

witness and their opinions regarding the shooters positioning and his other activities. The government acknowledges this evidence is relevant in their own expert disclosure, and as such, the topics and opinions are relevant to the Defense as well and to assist the jury in understanding the evidence. *See United States v. Graham,* 123 F.4th 1197, 1266 (11th Cir. 2024) ("If the government thought that [expert gang testimony]-related evidence was irrelevant, it would not have presented this evidence for the jury to consider.")

The Defense also has a relevance and due process interest in rebutting the government's expert through the introduction of additional evidence and through impeachment. The government should not be permitted to mislead the jury and introduce inaccurate or incomplete information. If that occurs, the Defense expert would introduce evidence to illuminate the truth for the jury.

For example, if the government's expert testifies to his opinion given in the government's expert notice that, "According to Special Agent Schnelle's training and experience Routh would have been able to acquire his target and fire all of the rounds in the magazine in a matter of seconds" then the Defense should be able to explain to the jury that 1) there were problems with Mr. Routh's alleged setup that could have prevented him from acquiring any target and 2) the jamming of the rifle could have prevented the firing of all the rounds of the magazine. To prevent such exculpatory evidence and impeachment would violate Mr. Routh's fundamental rights to a fair trial and deprive the jury the truth of the evidence.

      iii.     Precluding a Defense Expert would Violate Routh's Constitutional Rights to Present a Defense.

The Fifth Amendment Due Process Clause and the Sixth Amendment protect Mr. Routh's rights to compel witnesses and present a complete defense. The government cannot disparage or hinder the ability of an accused to mount a defense. The Government cannot utilize the Judiciary to strip the Defense's ability to challenge any of their expert testimony. This would be constitutional error.

      iv.     Non-Expert Testimony

The Government moves to exclude Mr. McClay from any testimony at all. Again, this would create obvious reversible error. For the subject matter testimony that does not involve opinions, Mr. McClay is permitted to testify to his observations when he conducted the operability testimony and reviewing the discovery materials under Federal Rule of Evidence 701. *United States v. Hernandez-Bautista*, 215 Fed. Appx. 727 (10th Cir. 2007). No notice is needed when a witness, who could be an expert, nevertheless offers only layperson observations. *United States v. Horn*, 129 F. 1275 (11th Cir. 2025); *United States v. Stahlman*, 934 F.3d 1199 (11th Cir. 2019). While the Government may not enjoy the results of the Defense operability testing as permitted by the Court, they cannot utilize the Court to now hide the results from the jury and mislead the jury into believing the firearm was fully operable- it was not. The firearm jammed on both of the expert's test fires. Because the government objected to more robust testing, the Defense expert's testimony would be limited to the testing he conducted and that was limited to the government's expert's choice to

only live fire two bullets. During the Defense expert's attempted two shot fire the second bullet jammed each time.

While the Defense has stipulated that impossibility is not a defense to the crimes charged, the Defense maintains that the firearm's inoperability and inaccuracy is circumstantial evidence of Mr. Routh's *lack of criminal intent*. Indeed, if the Court admits the government's proposed 404(b) evidence of prior firearm possession over the Defendant's objection, *see* DE 122:18-19, then the Defense will seek to introduce evidence in those police reports/witness statements that at least one of those firearms was not fully operable and also jammed.[2] In other words, if the allegations are to be believed, then Mr. Routh has a history of carrying borderline inoperable firearms. If the 404(b) evidence is admitted over the Defendant's objection, then the Defense will seek to cross-examine on this pattern of carrying firearms that jam and are not fully operable. Such evidence would support the Defense theory that Mr. Routh did not intend to shoot the firearm.

If the government chooses to introduce evidence that the firearm is operable, then the jury is entitled to hear that the firearm jammed twice upon testing. The government may choose not to proceed with evidence of operability, which is their decision. But if the government introduces evidence of operability, then the Defense

---

[2] The Defense recognizes the order issued today by the Court at DE 182 that states, "the April and December 2002 incidents likely should not be introduced at trial, subject to reconsideration if a defense or material development warrants reassessment." The defense would only seek to introduce the alleged pattern of faulty firearm possession if the Court admits the prior allegations.

has the right to contest and impeach such testimony so that the jury hears the complete truth of the evidence.

Putting operability aside, if the government calls an expert to give an opinion about a "snipers hide," positioning, the ability of the Defendant to empty the entire magazine in seconds, or the ability to hit the alleged target, then the Defense is entitled to an expert to explain, impeach, and rebut it. Reversible error may result in any exclusion over Mr. Routh's objection.

## CONCLUSION

In conclusion, the Defense requests this Court deny the Government's Motion to Exclude the sole Defense Expert Witness, Michael McClay. The government cannot strip Mr. Routh from presenting a complete defense and rebutting any government expert testimony.

Respectfully submitted,


HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Ave., Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 – Telephone
Kristy_Militello@fd.org

*s/Renee M. Sihvola*
Renee M. Sihvola
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar Number: 116070
109 N 2nd Ave
Ft. Pierce, Florida 34950
(772) 489-2123 - Telephone
Renee_Sihvola@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello

14