UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON/McCabe

UNITED STATES OF AMERICA

vs.

RYAN WESLEY ROUTH,

     Defendant.

_____/

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE (ECF No. 183) TO
GOVERNMENT'S MOTION TO EXCLUDE PROPOSED DEFENSE EXPERT
MICHAEL McCLAY (ECF No. 167)**

Routh's argument is essentially this: once the Government proposes to offer expert testimony on a topic, he is entitled to put on expert testimony no matter how it aligns with the Government's, or whether it complies with the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, or whether he disclosed it in advance, because to rule otherwise is "obvious reversible error" (ECF No. 183:11).  That is mistaken.  Even his front-page citation for the idea – *United States v. Graham*, 123 F.4th 1197 (11th Cir. 2024) – says that a defendant's proposed expert testimony must be "'**otherwise-admissible.**'"  *Id.* at 1266 (emphasis added).

District courts routinely exclude defense experts who, like McClay, propose to offer opinions that violate the rules, are irrelevant, or have no fit with the case.  And the Eleventh Circuit has affirmed those rulings.[1]  Here's why, as the Court of Appeals explained, *en banc*, in precedent

---

[1]    *See, e.g.*, *United States v. Herrera*, 2025 WL 40265 at **3-7 (11th Cir. Jan. 7, 2025) (affirming exclusion of defense expert, finding that the "district court did not violate Herrera's constitutional right to present a defense"); *United States v. Litzky*, 18 F.4th 1296, 1305-06 (11th Cir. 2021 (same, stressing "the mere fact that Dr. McClain's testimony 'would have been helpful to [Litzky]'s defense does not provide a compelling reason for admitting that testimony despite its

that binds this Court:

> [A] court may constitutionally enforce evidentiary rules to limit the evidence an accused (or for that matter any party) may present in order to ensure that only reliable opinion evidence is admitted at trial. "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth."
>
> While the Federal Rules of Evidence—notably Rule 702—aim to ensure that the fact-finder weighs only sound and reliable evidence, it is also worth repeating that a district court's exercise of its gatekeeping responsibilities must not "supplant the adversary system or the role of the jury."  As the ultimate fact-finder, it is the jury that must determine, finally, where the truth in any case lies, and the district judge as gatekeeper may not usurp this function. However, the trial judge's role as gatekeeper is designed to ensure that the jury, in carrying out its prescribed role, bases its determinations on relevant and reliable evidence, rather than on speculation or otherwise unreliable conjecture.
>
> These bedrock principles establish that, while a criminal defendant must be given every meaningful opportunity to present a complete defense, in doing so he must comply with the procedural and evidentiary rules designed to facilitate a search for the truth.  … Frazier's right to put on a meaningful defense did not include the unfettered and unreviewable opportunity to present all expert opinion, even if it did not meet the basic requirements for admissibility found in Rule 702.

*Frazier*, 387 F.3d at (some citations omitted).

The rules matter, because they serve a critical purpose in ensuring that criminal trials are

---

failure to satisfy *Daubert* and the rules of evidence.'"); *United States v.  Castanada*, 997 F.3d 1318, 1331 (11th Cir. 2021) (same); *United States v. Stahlman*, 934 F.3d 1199, 1220-21 (11th Cir. 2019) (same); *United States v. Gillis*, 938 F.3d 1181, 1194-95 (11th Cir. 2019) (same); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) (same); *United States v. Frazier*, 387 F.3d 1244, 1260-1273 (11th  Cir. 2004) (same, rejecting idea that "it was simply unfair to allow the government to present evidence—through [its experts] —on the very issue on which he was unable to offer evidence from [his]"); *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (affirming exclusion of defendant's proposed expert as unqualified, despite argument that expert's testimony was essential to rebut prior testimony by a government expert on the same topic). *See also, e.g.*, *United States v. Shi*, No. 21-20421-Cr-Gayles, ECF No. 72 (S.D. Fla. 2022) (granting Government's motion to exclude, ECF No. 60); *United States v. Soto*, No. 18-20668-Cr-Middlebrooks (S.D. Fla. Aug. 22, 2019) (excluding entirely a proposed defense expert, ECF No. 351); *United States v. Merrill*, No. 08-20574-Cr-Lenard, ECF No. 902 (S.D. Fla. 2008) (same).

decided on the facts, and not distorted by inapposite or misleading claims from dueling "experts." Rule 702(a), for example, requires that proposed expert testimony "help the trier of fact" – it must do even more than be relevant, in order words, it must materially add value to the jury in addressing an issue it must decide. Rule 16 requires genuine, early pretrial disclosure of proposed expert opinions "to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." Fed. R. Crim. P. 16, Adv. Cmte. Note, 2022 Amendments.

The rules, in short, apply to both sides – and Routh has failed to comply with them. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). We are not asking the Court to make a sweeping ruling about McClay's qualifications, or the possibility that different defense expert testimony might have been admissible. Neither are we asking the court to preclude normal cross-examination of the Government's experts. We are simply asking the Court to look at the two "opinions" proposed for McClay, and to find them insufficient on this record. And because Routh provided no other opinions for this witness, there is no basis for McClay to testify. [2]

With that background, we turn to the specific questions the Court must resolve:

---

[2]    In *Graham*, a divided panel reversed the district court's exclusion of defense expert testimony. *Compare* 123 F.4[th] at 1294 (Brasher, J., dissenting, finding the proposed testimony inadmissible). Outlier or not, *Graham* does not and could not overrule the Court's *en banc* opinion in *Frazier* – as recent precedent confirms. Moreover, the whole point of our motion is that McClay isn't offering any opinion on "on the same issue" such that "sauce for the goose is … sauce for the gander," *id.* at 1266. The United States is not offering testimony about an alleged misfeed in a test-fire exercise seven months after the crime, or about whether the rifle was the "optimal" "precision" tool for a sniper. The defendant's sauce is orange to the Government's apple.

**I.      McClay's proposed testimony about his test fire is inadmissible.**

Routh does not rebut any of the Government's objections to this testimony – testimony he has the burden to show is admissible.  *See, e.g., Marksman Sec. Corp. v. P.G. Security, Inc.*, 2021 WL 8972429 *2 (S.D. Fla. Dec. 15, 2021) (Cannon, J.) ("The proponent of expert testimony bears the burden of establishing admissibility." (citing *Frazier*, 387 F.3d at 1244)).  He does not, most importantly, explain how McClay's proposed testimony possibly could comport with this Court's rulings forbidding any evidence or argument supporting an "impossibility" defense (ECF No. 181:2).  He says only that McClay's testimony will provide "circumstantial evidence of Mr. Routh's lack of criminal intent."  How?

McClay has no insights into Routh's inner thoughts, certainly not any derived from his live-fire exercise.  McClay cannot opine himself about Routh's intent, based upon the live-fire exercise or on any other basis.  FRE 704(b).  So how does McClay's testimony permissibly relate to Routh's asserted lack of intent to kill?  It does not.  Expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Routh says that disallowing McClay's testimony would "mislead" the jury about the operability of the rifle at the time of his offense.  That is incorrect.  There is no dispute that the rifle was and is operable.  The most McClay could do is tell the jury about his personal difficulty firing multiple rounds seven months later – unlike Erich Smith's laboratory test-fire at Quantico shortly after the attempted assassination.  The test-fire has no relevance whatsoever to the elements of Count 1.

Routh's only other argument is that McClay's testimony may provide context to evidence about Routh's prior firearms possession.  As he concedes in a footnote, however, the Court's ruling

on the Government's 404(b) motion undermines that argument, at least for now (*See* ECF No. 182). We fail to see any connection between Routh's prior firearms possession incidents in 2002 and McClay's exercise in 2025, but either way, this theory does not presently provide a basis to admit McClay's testimony.

Routh also says nothing at all about the mini-trials that will result should the Court allow McClay's testimony. As we observed, Routh not only proposes to call McClay, he apparently also seeks to introduce photographs (embedded in his disclosure), and, as defense trial exhibits, "2 __ Ammunition Box __ Back" and "3__ Two Malfunction Rounds." *See* Defense Discovery Disclosure Index, June 6, 2025 (copy available for Court). McClay's testimony and these items, if allowed, simply set up a side show about the circumstances of McClay's test-fire, which occurred seven months after Routh possessed the rifle, followed by extensive FBI testing and chemical exposure in Quantico, then extended storage.

It also sets up a mini-trial about why the Government performed operability testing in the first place; the Court is aware that Erich Smith did so primarily at the FBI lab to generate a bullet casing for National Integrated Ballistic Information Network ("NIBIN") tracing, yet the defense in its pleading says McClay will critique Smith's "choice" to "only fire two live bullets" (ECF 183:11-12). If this type of misdirection is allowed, the Government will at minimum have to conduct additional testing and make additional disclosures of its own, all to litigate a wholly collateral trial dispute about a post-indictment exercise that has no relevance at all to what Routh intended to do with the rifle at the time.[3] The rules and the Constitution support steering away

---

[3]     For these reasons, among others, McClay's testimony about the test-fire would not be admissible even if offered as "fact" testimony rather than in the form of an expert opinion. Routh refers to that possibility, but does not develop it, presumably because basic concepts of relevance

from that dispute. *See, e.g., Litzky,* 184 F.4th at 1305 (rejecting a Due Process challenge to the exclusion of a defense expert, stressing that "'the Constitution leaves to the judges who must make these admissibility decisions wide latitude to exclude evidence that poses an undue risk of confusion of the issues.'" (citations omitted)). Defense counsel argued vigorously against some of the Government's proposed Rule 404(b) evidence by complaining that "we're going to end up in a trial within a trial." Tr. 5/14/25:103. This goes both ways.

## II.   The defense does not address, let alone show the admissibility of, McClay's proposed opinion about this rifle as the "optimal precision sniper tool."

Routh says nothing about our arguments for excluding the single opinion that appeared in McClay's original disclosure. Indeed, he does not even quote the opinion we are objecting to. So we will, again: McClay wants to tell the jury that this rifle "in its state at the scene of the alleged offense, would not have been the optimal precision sniper tool" and that "[a] sniper would choose a precise, accurate weapon and not utilize the additions to the rifle of the silicone/putty, wrapper optic shroud, hose clamps, and the scope itself without a proper mounting bracket" (ECF No. 167). This proposed opinion lacks any fit to the facts of the case and would not be helpful to the jury.

We need not repeat all our arguments here, beyond reiterating that the Government is not offering an opinion about whether Routh's chosen weapon on September 15 was the "optimal" "precision" "tool" for a professional sniper. Murder can be intended, and accomplished, by anyone without the "optimal precision tool" for killing in cold blood.

---

and confusion foreclose him. *See* FRE 401, 402 (irrelevant evidence is inadmissible); 403 (even relevant evidence may be excluded if it poses a danger of confusion, waste of time, or misleading the jury); 701 (lay opinion testimony must be "helpful to … determining a fact at issue").

We stand by our arguments demonstrating why, in our view, McClay's proposed opinion on this point is irrelevant, has no fit with Routh's circumstances, and would mislead and confuse the jury.  McClay should not be allowed to voice any opinion about whether this rifle, at the time Routh possessed it, was the "optimal precision sniper tool," or which weapon in McClay's view might have been more "optimal."  If the Defendant intended to kill President Trump, and took a substantial step toward doing so, he violated §351 – whether or not he was a trained sniper, whether his weapon of choice was the "optimal precision tool" for some hypothetical professional sniper, or whether a trained sniper "would choose" a more "precise, accurate weapon" – a luxury that Routh, of course, did not have as a convicted felon unable to obtain any firearm legally.

### III.     The rules do not give the Defendant a pass on complying with the duty to disclose actual proposed opinions.

Rule 16's disclosure requirements, and S.D. Florida Local Rule 88.10(o), apply to all parties in a criminal case.  There is no carve-out for a defendant who elects not to comply. McClay's initial disclosure does not state any proposed opinions, instead only listing subject matters (other than the one about the "optimal" killing tool).  It is also still impossible to say exactly what McClay will be offered as an expert about, since he appears to be the defense's man-for-all-seasons on the Government's evidence about Routh's activities at the golf course.  Our concern on this front is exacerbated by the Response's suggestion that McClay may opine about the rifle's "inaccuracy" (ECF 183:12), a topic that this Court's April 15 Order emphatically put off limits. (*See* ECF No. 128:2).

Routh cherry picks from the Government's disclosures for its toolmark examiner (Smith) and for FBI SWAT team member Nicholas Schnelle, but we encourage the Court to read our disclosures in full, because they show how vastly different McClay's is when it comes to actually

stating opinions. *See* ECF No. 129 (attaching Government's disclosures for these two witnesses). The defense never challenged our disclosures in any way, nor could it. Ultimately, however, the admissibility at trial of McClay's undisclosed opinions does not turn on the adequacy of the Government's disclosure.[4]

## Conclusion

Excluding McClay's testimony because (1) the two opinions he seeks to offer are not admissible, and (2) he provided no other opinions, is constitutional, well within the Court's broad discretion, and proper under the circumstances of this case. We are asking the Court to focus upon the disclosures before us and find that they do not provide a basis for McClay to testify. It is the proponent's burden to establish the admissibility of expert testimony. Nothing in any precedent from the Eleventh Circuit, or the concept of "right to present a defense," relieves Routh of that burden. The defense remains free to cross-examine and seek to impeach the Government's experts, in exactly the way the Court expressly contemplated in its April 15 Order (ECF No. 128:2). But Routh has not met his burden, at this time, for calling McClay.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:  /s/ *John Shipley*
John C. Shipley
Florida Bar No. 69670

---

[4] It is unpersuasive for Routh to complain that the Government did not raise its concerns about McClay's initial disclosure earlier. Routh waited six months after indictment to make this disclosure on March 29, 2025. Almost immediately thereafter, on April 15, the Court ordered the test-fire, and the Government advised the Court and defense on April 28 that it would raise all of its objections about McClay in a single pleading filed by the new June 9, 2025, deadline (ECF No. 146). We did that. Routh's complaint is more hollow because it is clear that he would not have made, and will not make, further disclosures voluntarily.

Christopher B. Browne
Florida Bar No. 91337
Maria K. Medetis Long
Florida Bar No. 1012329
Assistant United States Attorneys

U.S. Attorney's Office
Southern District of Florida
99 Northeast 4th Street, 8th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9111
E-mail: John.Shipley@usdoj.gov


JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL FOR THE
NATIONAL SECURITY DIVISION

By:     */s/ James Donnelly*
James Donnelly, Trial Attorney
Court ID No. A5503278
Department of Justice, National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-0849


## CERTIFICATE OF SERVICE AND CONFERRAL

The Government filed the foregoing document with the Clerk of the Court using CM/ECF

on June 30, 2025.


/s/ *John C. Shipley*
Assistant United States Attorney