UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-80116-CR-CANNON

**UNITED STATES OF AMERICA**,

v.

**RYAN WESLEY ROUTH**,

    Defendant.
_____/

**ORDER DENYING UNITED STATES' MOTION TO EXCLUDE
PROPOSED DEFENSE EXPERT MICHAEL McCLAY**

**THIS CAUSE** comes before the Court upon the United States' Motion to Exclude Proposed Defense Expert Michael McClay [ECF No. 167 (the "Motion")]. The Court has reviewed the Motion, Defendant's Opposition [ECF No. 183], the United States's Reply [ECF No. 186], and the full record [ECF Nos. 113, 129, 165]. The Court also heard argument on the Motion at a hearing on July 25, 2025 [ECF No. 223].[1] Upon full review, and fully advised in the premises, the Motion is **DENIED**. For the reasons further explained below, the current record does not support exclusion of McClay. Any specific objections to McClay's opinion testimony can be raised at trial.[2]

---

[1] Although the parties briefed the Motion prior to Defendant being authorized to proceed *pro se*, *pro se* Defendant thereafter reaffirmed his intent to call McClay as a witness in his case and presented argument on the Motion during the July 25, 2025, hearing [ECF No. 211 p. 16].

[2] Nothing in this Order should be construed as inconsistent with Defendant's full presumption of innocence.

**FACTUAL BACKGROUND**

I.     **The United States' Firearm Experts**

A grand jury returned a five-count indictment against Defendant charging him with the following five offenses: (1) attempted assassination of a major presidential candidate, in violation of 18 U.S.C. § 351(c) (Count 1); (2) possession and brandishing of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2); (3) assault of a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count 3); (4) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 4); and (5) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count 5) [ECF No. 21]. Trial is set to begin on September 8, 2025 [ECF Nos. 21, 196].

The parties have stipulated that the rifle that forms the basis of Counts 2, 4, and 5 qualifies as a "firearm" and moved in interstate commerce [ECF No. 213-1 (listing stipulations)]. *See* 18 U.S.C. § 921(a)(3)].

Relevant for purposes of the present Motion, the United States has disclosed that it anticipates calling the following two expert witnesses as part of its case-in-chief: Erich D. Smith, FBI Firearms/Toolmark Examiner; and Nicholas Schnelle, FBI Special Agent, Special Weapons and Tactics Team [ECF No. 129-1 (Smith FBI Lab Report); ECF No. 129-2 (summary of Special Agent Schnelle's opinion)].

In September 2024, shortly after the alleged events giving rise to these charges, FBI Examiner Smith examined the seized rifle in this case [ECF No. 129-1]. The United States has represented that Smith will testify, in part, that he tested and examined the rifle, that he fired it twice, and that it "functioned normally when tested in the Laboratory . . . ." [ECF No. 223 pp. 8, 11; ECF No. 129-1 p. 2]. Smith's test fire was primarily for the purpose of conducting a search in

2

the National Integrated Ballistic Information Network (NIBIN) [ECF No. 223 p. 8].  As for FBI Special Agent Schnelle, described as a "sniper expert," he is expected to testify "from his extensive special weapons and tactical expertise and training regarding Defendant's activities and positioning" during the events in question [ECF No. 129-2 p. 1; ECF No. 223 p. 10].  Schnelle will also testify regarding, among other things, Defendant's "observation point" or "final firing point," as well as "why a vantage point is desirable for a particular target" [ECF No. 129-2 p. 2 (characterizing Defendant's position as "a good sniper 'hide'")].  Further, Schnelle will testify as to the semi-automatic nature of the rifle, meaning that it "can be fired as fast as an individual can pull the trigger[,]" and that "[t]he use of a high capacity magazine allowed more rounds to be fired at the target" [ECF No. 129-2 pp. 3–4].  Finally, Schnelle will testify that Defendant "would have been able to acquire his target and fire all rounds in the magazine in a matter of seconds" [ECF No. 129-2 p. 4].

## II. Proposed Defense Expert Michael McClay

Michael McClay is a former sniper in the United States Marines; his experience includes serving as a Chief Instructor at the USMC Scout Sniper School [ECF No. 183 p. 5 n.1].[3]  Defendant has advised that McClay is primarily being offered for impeachment and rebuttal of the United States' experts [ECF No. 183 p. 7].

In Defendant's March 29, 2025, initial disclosure of McClay, Defendant indicated that McClay "would testify from his weapons and tactical expertise and training regarding the alleged assailant's activities and positioning" [ECF No. 167 p. 3;  ECF No. 113 (notice of expert

---

[3] The United States' Motion does not, at this time, challenge McClay's qualifications [ECF No. 167 p. 8 n.3].

disclosure)].[4]  Defendant also described McClay's anticipated testimony regarding, among other things, "the observation point, including its vantage point," "positioning of potential target," "line of sight angles," and the "ability to fire this type of semi-automatic rifle" [ECF No. 167 p. 3]. Finally, Defendant's initial disclosure generally references McClay's anticipated testimony concerning the rifle's operation with the scope, the function and settings of the scope, and other similar topics—along with McClay's opinion that "[t]he rifle, in its state at the scene of the alleged offense, would not have been the optimal precision sniper tool" [ECF No. 167 p. 3].

After McClay's initial disclosure, and because the United States represented its intent to present evidence regarding the operability of the rifle when tested in the laboratory by Smith, the Court authorized live-fire testing of the rifle limited to an examination of its actual or potential operability [ECF No. 128 pp. 1–2 & n.1; ECF No. 165 (Defense notice of supplemental expert disclosure)].  McClay proceeded to conduct a test fire of the rifle in May 2025 and produced a supplemental disclosure following that test.  That supplemental disclosure indicates that McClay would testify, in part, that he

> loaded the magazine into the rifle, placed the weapon onto fire (position), and pulled the trigger.  The rifle expelled the projectile into the berm and the bolt extracted the spent casing.  As the bolt went forward to cycle the second round from the magazine, the cartridge misfed and jammed at the throat of the chamber.

[ECF No. 167 p. 4].  McClay would further testify that he repeated the process, with the same result—a successful fire and then a jam on the second attempt to fire the weapon [ECF No. 167 p. 4–5].  The supplemental disclosure also contemplates McClay offering a speculative claim as to the cause of the reported misfire, though McClay admits further testing would be necessary to make such a determination [ECF No. 167 p. 5].

---

[4] The McClay disclosures have not been filed on the docket but are reproduced in significant part in the United States' Motion [ECF No. 167 pp. 3–5].  This Order cites to those excerpts of the disclosures.

4

## LEGAL STANDARDS

Federal Rule of Evidence 702 "controls the admission of expert testimony." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). Pursuant to that rule, an expert witness may testify if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Fed. R. Evid. 702; *Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Expert opinion that satisfies these requirements remains subject to the balancing test in Rule 403. Fed. R. Evid. 403; *Frazier*, 387 F.3d at 1263.

It is "'an abuse of discretion to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue.'" *United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024) (quoting *United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1992)). Accordingly, as a general matter, "'what's sauce for the goose [in the law] is normally sauce for the gander.'" *Graham*, 123 F.4th at 1266 (quoting *United States v. Knowles*, 889 F.3d 1251, 1257–58 (11th Cir. 2018)).

## DISCUSSION

The United States asks the Court to bar McClay from testifying altogether [ECF No. 167, 186]. According to the United States, McClay's account of his live-fire test is irrelevant and unhelpful, and the same goes for his opinion that the rifle was not the "optimal precision sniper tool" [ECF No. 167 pp. 8–14; ECF No. 186 pp. 4–7]. As for the rest of McClay's disclosures, the United States says they do not state actual opinions and do not otherwise provide a basis for McClay to testify [ECF No. 167 pp. 14–17; ECF No. 186 pp. 7–8]. Defendant rejects these

5

arguments, emphasizing what Defendant describes as a lack of basic fairness in permitting a government expert to testify on a topic while excluding as irrelevant McClay's proposed testimony on that same topic [ECF No. 183 pp. 1–2, 9–10; ECF No. 223 p. 28].

The Court has reviewed the parties' arguments and the competing authorities.  Having done so, the Court determines that the current record does not support the United States' broad request to exclude McClay as a witness.  As it stands, McClay proposes to testify as an expert on matters that sufficiently align with the topics identified by the United States' expert disclosures, albeit with some differences.  For example, Schnelle plans to testify regarding Defendant's "observation point" or "final firing point," as well as "why a vantage point is desirable for a particular target," and that Defendant's position "was a good sniper 'hide'" [ECF No. 129-2 p. 2].  McClay counters with testimony regarding, among other things, Defendant's "activities and positioning," "the observation point, including its vantage point," and "positioning of potential target" [ECF No. 167 p. 3].  Likewise, as discussed at the hearing, the United States plans to offer testimony that the rifle was capable of firing multiple rounds [ECF No. 223 pp. 8–15], while McClay would say that, in his test, it fired twice but jammed after each of those successful shots [ECF No. 167 pp. 4–5].[5]

As of a result of that significant overlap, and mindful of the general principle of equal treatment in the context of expert witnesses, the Court is not in a position to declare that McClay's proposed testimony is wholly irrelevant and warranting full exclusion.  *See, e.g.*, *Graham*, 123 F.4th at 1266; *Lankford*, 955 F.2d at 1551–1552; *see also United States v. Cohen*, 510 F.3d 1114, 1126 (9th Cir. 2007) ("[T]he best way for the district court to have insured the exclusion of the potentially inadmissible aspects of [the expert's] testimony was not to bar him from testifying

---

[5] The United States suggested openness during the hearing to narrowing some parts of Schnelle's testimony regarding the rifle's ability to fire multiple rounds but still maintained its intent to have Smith testify that the rifle properly fired twice [ECF No. 223 pp. 12–15].

altogether, but to sustain the government's objections to particular questions likely to elicit inadmissible evidence under the rule.").[6] [7]

Nothing in this Order should be construed to undermine any of the Court's prior orders [ECF Nos. 128, 181]. Nor should this Order be read as a final decision on the admissibility of any proffered evidence. It remains the case that a conviction for attempt does not require that a defendant actually commit the final act required for conviction for the underlying crime. *United States v. Root*, 296 F.3d 1222, 1228–29 (11th Cir. 2002); *United States v. Duran*, 96 F.3d 1495, 1507–09 (D.C. Cir. 1996); *United States v. Forbrich*, 758 F.2d 555, 557 (11th Cir. 1985) (explaining that, in a trial for attempt, "[t]o find that a substantial step was taken, the court must determine that the defendant's objective acts mark the defendant's conduct as criminal so that the defendant's acts as a whole strongly corroborate the required culpability).[8]

---

[6] Measured against the United States' disclosures, the Court also disagrees with United States' contention that exclusion of McClay is warranted because his disclosures lack sufficient specificity and thus violate Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) and Local Rule 88.10(o)(3) [ECF No. 167 pp. 14–17; ECF No. 186 pp. 7–8].

[7] The United States' point that key differences likely exist between the Smith test and the McClay test (i.e., that McClay test was approximately eight months later and after chemical testing) is well taken. Even still, the Court disagrees that these differences render McClay's testimony wholly irrelevant and unhelpful. Moreover, even if the Court agreed with the United States on this point, that would not be a basis to exclude McClay's testimony on issues other than the live fire.

[8] To the extent Defendant appears to construe McClay's testimony as lay testimony [ECF No. 183 pp. 11–13], the Court disagrees based on the record presented. McClay was first disclosed to the United States as a "defense expert," and in seeking to compel live-fire testing (ultimately conducted by McClay), Defendant sought an "independent expert inspection" [ECF Nos. 113, 114]. Although Defendant makes some general references to McClay as a fact witness, he does not develop that argument, and his opinions and background are consistent with specialized knowledge as contemplated in Fed. R. Evid. 702.

CASE NO. 24-80116-CR-CANNON

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The United States' Motion [ECF No. 167] is **DENIED** in accordance with this Order.

2. To the extent the United States determines that additional expert disclosures are warranted in light of this Order, the Court authorizes a supplemental disclosure by the United Sates—limited to issues implicated by McClay's disclosures—due to *pro se* Defendant and standby counsel on or before **August 18, 2025**. Any surrebuttal disclosure, if necessary, is due on or before **September 4, 2025**. No additional live fire testing will be permitted.

**ORDERED** in Chambers at Fort Pierce, Florida, this 8th day of August 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record