UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-80116-CR-CANNON

**UNITED STATES OF AMERICA**,

v.

**RYAN WESLEY ROUTH**,

    Defendant.
_____/

**ORDER DENYING *PRO SE* DEFENDANT'S MOTION TO COMPEL
DEFENSE DOCTOR EXPERT WITNESSES [ECF No. 229]**

**THIS MATTER** comes before the Court upon *Pro Se* Defendant Routh's Motion to Compel Defense Doctors Buigas and Holmes as Expert Witnesses, filed on August 8, 2025 (the "Motion") [ECF No. 229].[1] The Motion generally recognizes that all deadlines for expert disclosures and pretrial motions expired months ago [ECF No. 91 p. 6]. But Defendant nevertheless seeks to compel the expert trial testimony of Drs. Holmes and Buigas (along with payment of expert fees), claiming that (1) his appointed counsel (now standby counsel) made a "gross oversight" in not disclosing the doctors earlier as trial witnesses; and (2) their testimony is relevant as character evidence to show his personality trait of "narcissism" under Federal Rule of Evidence 404(a)(2)(A) [ECF No. 229].[2] The United States opposes the Motion, emphasizing the untimeliness of the request in light of the Court's

---

[1] As referenced below, Dr. Buigas's report concludes that Defendant is competent to stand trial and does not qualify for an insanity defense [ECF No. 192-1 (sealed)]. Dr. Holmes's report similarly concludes that Defendant is competent and does not qualify for an insanity or diminished capacity defense [ECF No. 230 (sealed)]. Additional, generalized references to these reports are included below.

[2] The Motion itself does not explain the specific basis of the doctors' proposed testimony or the relevant character trait, but Defendant identified "narcissism" as the associated character trait during the pretrial conference on August 8, 2025 [ECF No. 241 pp. 30–31].

clear deadlines and subsequent order barring mental-health related evidence [ECF Nos. 91, 181]; appointed counsel's knowing decision not to disclose these witnesses as trial experts; the prejudice to the prosecution, victims, and interests of justice from this late disclosure ahead of trial on September 8, 2025; and the absence of good cause underlying the Motion in any event, citing Federal Rules of Evidence 404, 405, and 704 [ECF No. 236]. For the reasons explained below, the Motion is **DENIED**.

## PROCEDURAL HISTORY

On September 24, 2024, a grand jury in this district returned an Indictment charging Defendant with the following five offenses: (1) attempted assassination of a major presidential candidate, in violation of 18 U.S.C. § 351(c) (Count 1); (2) possession and brandishing of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2); (3) assault of a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count 3); (4) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 4); and (5) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count 5) [ECF No. 21].

The Court set trial initially for November 18, 2024 [ECF No. 29] but has since continued trial twice—once in October 2024 with an order resetting trial for February 10, 2025 [ECF No. 51], and a second time in December 2024, permitting a final continuance to September 8, 2025 [ECF No. 91; *see* ECF No. 196].

In the December 2024 Scheduling Order, the Court set various pretrial deadlines that have governed this proceeding throughout, as acknowledged by the parties repeatedly [ECF No. 91 pp. 6–7]. The first such deadline required the defense to provide "[a]ny notice of an insanity defense, notice of expert evidence of a mental condition, or motion for mental competency or for relief related to Defendant's mental condition" on or before **February 3**, **2025** [ECF No. 91 p. 6 (citing Fed. R. Crim. P. 12.2)]. That deadline, the Court explained, was reasonable and "necessary to ensure a just, orderly,

and speedy trial . . . given the procedural history of this case" [ECF No. 91 p. 6]. The deadline for any other defense expert disclosures (outside of mental-health disclosures) was **March 28, 2025** [ECF No. 91 p. 6]. And the deadline for pretrial motions was **April 7, 2025** [ECF No. 91 p. 6]. Later in March 2025, following a status conference, the Court set two more clear deadlines: April 29, 2025, for *Daubert* Motions; and July 8, 2025, for motions *in limine* [ECF No. 109 p. 4].

Defendant's appointed counsel was aware of these explicit deadlines, complied with all of them, and never sought a related continuance. As to the mental-health disclosure deadline specifically, Defendant's former appointed counsel did not notice any such defense, explicitly acknowledging that fact twice in open Court [ECF No. 107 p. 33 (March 7, 2025, Status Conference: "[W]e're not relying on such a defense."); ECF No. 158 p. 66 (May 14, 2025, Motions Hearing: "We agree not to argue insanity or diminished capacity.")].[3] And all of this was formally recognized in the Court's June 20, 2025, Order Granting in Part and Denying in Part United States' Motion to Preclude Legally Prohibited and Factually Baseless Defenses [ECF No. 181]. In that Order, again because of the foregoing series of expired deadlines, the Court explicitly prohibited Defendant "from arguing, or introducing lay or expert testimony, that he lacked the capacity to form the mens rea required by any of the crimes charged in this case" [ECF No. 181 p. 3]. The Court further explained the resulting prohibition on admission of mental-health related evidence:

> In light of Defendant's failure to notice an insanity or mental-health defense in accordance with the Court's Order, Defendant is prohibited from relying on any such defense or introducing any evidence in support of such a defense. *See* Fed. R. Crim. P. 12.2(d). Nothing in this Order shall be construed to limit the defense's ability to cross-examine witnesses on Defendant's demeanor or behavior.

[ECF No. 181 p. 3].

In July 2025, after nine months of active and competent appointed representation by two Assistant Federal Public Defenders, Defendant moved to waive his right to appointed counsel and

---

[3] Defendant has been present at all hearings in this case.

3

proceed *pro se* [ECF No. 189; ECF No. 197 pp. 3–4, 7]. The Court then conducted two *Faretta* colloquies, first on July 10, 2025, with a follow-up hearing on July 24, 2025 [ECF Nos. 210, 211]. At the first *Faretta* hearing, Defendant expressly acknowledged that he would be required to comply with all Court orders and the Federal Rules of Evidence and Criminal Procedure; that trial would not be further continued from the twice-continued setting of September 8, 2025; that he was ready to proceed; and that the Court would "not be extending or lifting any of th[e] already-expired deadlines," including the deadline for pretrial motions [ECF No. 210 pp. 23, 26, 29–30]. At the second *Faretta* hearing, Defendant once again confirmed his full understanding that the deadline for pretrial motions had expired [ECF No. 211 p. 21]. Defendant gave no suggestion at either *Faretta* hearing that any further motion would be forthcoming; nor was there ever any suggestion throughout these proceedings that a late-filed expert notice related to mental-health related evidence would be necessary or sought.

Now, one month before trial, and following significant preparation by all parties and the Court in accordance with the Court's clear scheduling orders,[4] Defendant asserts that he needs Drs. Holmes and Buigas to testify as expert witnesses in his case [ECF No. 229]. He does not specify in the Motion why their testimony is required beyond a conclusory assertion that they "provide invaluable evidence under [Federal] Rule [of Evidence] 404" [ECF No. 229; ECF No. 241 pp. 30–31]. He then goes on to blame his former appointed counsel for purportedly committing a "gross oversight" in failing to notice the doctors' testimony earlier. And he further argues that both doctors will "speak to Intent, Intent, Intent" and facilitate "ascertaining the truth and securing just determination" under Federal Rule of Evidence 102 [ECF No. 229].

---

[4] As an example, in late June 2025, in part to accommodate the high number of necessary prospective jurors as briefed and discussed by the parties in anticipation of trial, court personnel issued juror summonses specifically tailored for a September 8, 2025, trial date [ECF No. 187 pp. 12–13; *see* ECF No. 172 (joint report on jury selection procedures)].

## LEGAL STANDARDS

District courts have discretion to set deadlines for pretrial motions and notices of mental-health defenses, and indeed are required to set deadlines for a defendant's expert disclosures "to provide a fair opportunity for the government to meet the defendant's evidence." *See* Fed. R. Crim. P. 12(c); Fed R. Crim. P. 12.2(a)–(b); Fed. Crim. P. 16(b)(1)(C)(ii); *United States v. Salom*, 349 F. App'x 409, 411 (11th Cir. 2009); *see also United States v. Smith*, 422 F.3d 715, 725 (8th Cir. 2005) ("The district court's ability to manage its own docket includes the ability to make decisions regarding the deadline for pretrial filings."). If a party fails to timely disclose expert witnesses under Rule 16, the Court may "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). Late notices under Rule 12.2(a) and (b) may be allowed only upon a showing "good cause." Fed. R. Crim. P. 12.2(a), (b). Similarly, "[w]hile a pretrial motion filed beyond a court-set deadline is untimely, a court may consider the untimely motion if the filing party 'shows good cause.'" *United States v. Ingram*, No. 23-11251, 2025 WL 1879461, at *5 (11th Cir. July 8, 2025) (citing Fed. R. Crim. P. 12(c)(3)); *see also United States v. Santana-Dones*, 920 F.3d 70, 80 (1st Cir. 2019) ("Court-imposed deadlines are often used to ensure the orderly administration of justice—and quite properly so.").

Rule 404(a) generally prohibits "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). But in a criminal case, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A). "When evidence of a person's character or character trait is admissible [under Rule 404(a)], it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). On the other hand, "[s]pecific instances of conduct ordinarily

may be used only '[w]hen a person's character or character trait is an essential element of the charge.'" *United States v. Ahmed*, 73 F.4th 1363, 1384 (11th Cir. 2023) (quoting Fed. R. Evid. 405(b)).

Rule 704 prohibits expert witnesses in criminal cases from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," because "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b).

## DISCUSSION

As background, Drs. Buigas and Holmes conducted psychological evaluations of Defendant; Dr. Buigas completed a competency evaluation in February 2025, concluding that Defendant was competent to proceed and not eligible for an insanity defense [ECF No. 192-1]; Dr. Holmes completed an evaluation for potential sentencing purposes in July 2025, finding Defendant competent to proceed and ineligible for an insanity or diminished capacity defense [ECF No. 230; *see* ECF No. 210 pp. 35–36 (standby counsel explaining that "we anticipated [her] report that we would use in mitigation" if necessary at sentencing)]. Beyond these top-line conclusions, Dr. Holmes's report states that Defendant meets the criteria for "a narcissistic personality disorder" [ECF No. 230 p. 2], while Dr. Buigas more broadly concludes that Defendant has "mixed personality features including schizotypal, narcissistic, and antisocial features" [ECF No. 192-1 p. 7]. The Court considered Dr. Buigas's evaluation in determining whether Defendant's waiver of appointed counsel was both knowing and voluntary [ECF No. 208 pp. 3, 5 & n.3; *see* ECF No. 197 p. 47

Although Defendant frames the Motion as a "Motion to Compel" the expert testimony of Drs. Buigas and Holmes, the relief requested is properly construed as a motion for leave to file late expert disclosures; for a pre-trial ruling admitting the proposed expert testimony as character evidence at trial; and for issuance of subpoenas and expenses under Rule 17(b). Understood accordingly, Defendant's Motion fails for three independent reasons: (1) it is clearly untimely under the Court's Orders and fails to provide good cause to excuse such untimeliness; (2) it seeks relief the granting of

6

which would effectively deprive the United States of a fair opportunity to respond to Defendant's evidence; and (3) it does not offer a sufficient evidentiary or legal basis to authorize the admission of the expert testimony for the character purpose offered, even assuming a basis existed to excuse the unjustified untimeliness of the Motion and its resulting prejudice.

*First*, the Motion plainly violates the Court's scheduling orders and otherwise fails to establish good cause. As noted in the procedural history section above, the Court set various explicit deadlines for pretrial motions, mental-health notices, and expert disclosures. The deadline for disclosures of mental-health experts expired over six months ago (on February 3, 2025) [ECF No. 91 p. 6]; the pretrial motions deadline expired four months ago (on April 7, 2025) [ECF No. 91 p. 6]; and the deadline to file *Daubert* motions expired nearly four months ago too (on April 29, 2025) [ECF No. 109 p. 4]. And *pro se* Defendant expressly acknowledged the expiration of these deadlines when he chose to proceed *pro se*, affirming in open Court his commitment to comply with all Court orders and proceed to trial as scheduled [ECF No. 210 pp. 23, 26, 29–30]. As a result of Defendant's decision not to timely disclose any expert evidence regarding his mental condition—and with Defendant's express agreement not to "off[er] at trial expert evidence relating to a mental disease or defect or any other mental condition of the Defendant allegedly bearing upon his guilt" [ECF No. 159-1; *see* ECF No. 163 p. 66]—the Court properly barred Defendant from introducing any mental-health evidence to challenge his intent to commit the alleged crimes [ECF No. 181 p. 3].

The net result of this chronology is obvious: Defendant's Motion to permit disclosure of expert witnesses is clearly untimely and fails to establish good cause to excuse the untimely proffer of already barred mental-health related evidence at this late stage. Defendant's only attempt at a good-cause showing in the Motion is to accuse former appointed counsel of a purported "gross oversight" [ECF No. 229]. But there was no such oversight; the deadlines were clearly delineated and acknowledged by appointed counsel, who made a knowing and reasonable decision not to introduce

7

mental-health related evidence.[5] Even looking beyond the Motion to search for good cause, the record shows none. The defense knew of Dr. Buigas's reference to Defendant's narcissistic features prior to the mental-health expert disclosure deadline; the defense strategy was entirely consistent with that knowledge going forward; and the *pro se* Motion offers no basis other than a conclusory attack on competent appointed counsel to explain why he waited weeks before trial to raise this issue for the first time. Indeed, not even at Defendant's recent *Faretta* hearings—when he clearly acknowledged the expiration of various deadlines—did he mention any forthcoming motion related to mental health experts. The untimeliness is therefore clear, and Defendant offers no good cause to excuse it.

*Second*, as the United States properly argues, the prejudice resulting from the untimeliness of the Motion is significant [ECF No. 236 p. 2]. The Court set the original mental-health evidence disclosure deadline for February 3, 2025, "to ensure a just, orderly, and speedy trial" and to permit the United States a fair opportunity to meet Defendant's expert evidence [ECF No. 91 p. 6]. *See* Fed. R. Crim. 16(b)(1)(C)(ii). The United States thus proceeded with those deadlines in place, as did the Court when it entered its agreed-to Order prohibiting mental-health evidence from being introduced at trial to challenge intent [ECF No. 181 p. 3 (Order following stipulation of the parties)]. Yet Defendant effectively seeks a reversal of that ruling now, without sufficient time for the United States to procure and prepare rebuttal expert testimony on any disputed topics in Drs. Buigas's and Holmes's reports. *See* Fed. R. Crim. P. 16(b)(1)(C)(ii). The Court's pretrial deadlines—including explicitly as to mental-health related evidence—were set for this very reason: to avoid unreasonable surprise, to allow adequate response, and to avoid delay of the twice-continued trial date. Defendant's conclusory Motion offers no basis to reconsider the Court's earlier rulings or to upend the carefully considered deadlines in this case [ECF No. 181 p. 3].

---

[5] As accurately relayed by appointed counsel, both medical reports refute any basis to challenge Defendant's competency or to raise an insanity or diminished-capacity defense. *See supra* note 1 and p. 3.

*Third*, beyond untimeliness, lack of good cause, and prejudice, the Motion lacks a reason to conclude that the proposed expert opinion regarding Defendant's mental-health condition of "narcissism" accords with the character evidence parameters in Rules 404 and 405 or the prohibition on expert testimony regarding mental state under Rule 704.  *See* Fed. R. Evid. 405(a) (limiting authorized character evidence to reputation or opinion testimony); Fed. R. Evid. 704(b) (prohibiting an expert witness in a criminal case from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense"). Defendant suggests otherwise, asserting in conclusory fashion that the doctors' testimony is "needed to provide invaluable evidence under Rule 404"—but he offers no explanation or authority supporting the admissibility of their testimony under that rule [ECF No. 229].  Nor is it clear that he could, at least not in the way he presents in the Motion.  For starters, Defendant offers no legal foundation from which to believe that narcissism itself qualifies as a "pertinent trait" to the alleged crimes in this case under Rule 404(a)—particularly where, as here, narcissism is neither an essential element of any charge in the Indictment nor a topic injected by the United States in a manner warranting rebuttal from the defense.  Second, even if it were appropriate to treat narcissism as a qualifying "pertinent trait" under Rule 404(a)—a proposition for which Defendant offers no support—the only type of hypothetically admissible character evidence would be reputation or opinion testimony under Rule 405(a).  *See* Fed. R. Evid. 405(b) (permitting evidence of specific instances of a character trait only "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense"). But it is by no means clear that Rule 405(a) allows an expert witness to offer a character opinion on narcissism—as opposed, for example, to an expert opinion on truthfulness in line with Rule 608. *Cf. United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995) (endorsing the use of reliable expert opinion testimony in appropriate circumstances to establish a witness's character for truthfulness under Rule

9

608 as aligned with Rule 405).[6] At the very least, and as the United States correctly points out [ECF No. 236 pp. 3–4], even if Defendant could overcome Rules 404 and 405, Rule 704(b) poses another obstacle that is not confronted in the Motion. That rule bars expert witnesses in criminal cases from stating an opinion "about whether the defendant did or did not have the mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Yet it seems Defendant seeks to do that very thing here, declaring the testimony of Drs. Buigas and Holmes as relevant to show "Intent, Intent, Intent" [ECF No. 229]. For these additional reasons, Defendant's Motion is due to be denied.

## CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. *Pro se* Defendant's Motion to Compel Defense Doctors Buigas and Holmes as Expert Witnesses [ECF No. 229] is **DENIED**.

2. Subject to any future Court rulings and trial-specific objections, this Order should not be construed to limit Defendant's ability to cross-examine witnesses on Defendant's demeanor or behavior [ECF No. 181 p. 3] or to offer otherwise admissible evidence.

**ORDERED** in Chambers in Fort Pierce, Florida, this 26th day of August 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record / standby counsel

   Ryan Routh, *pro se* (via standby counsel)

---

[6] Expert evidence is generally governed by Rules 702 and 703 and *Daubert*. *See* Fed. R. Evid. 702, 703; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).